**ALEXANDER CO. et al. v. FIRST NAT. BANK OF LA GRANGE.**

No. 8738.

Court of Civil Appeals of Texas. Austin.

Jan. 4, 1939.

Wm. O. Bowers, Jr., of Beaumont, for appellant Alexander Co.

C. C. Jopling, of La Grange, for appellants Jeanette, Rae, Gertrude, and Essic Alexander.

J. W. Ragsdale, of Victoria, and Moss & Moss, of La Grange, for appellee.

McCLENDON, Chief Justice.

Appellee Bank sued Alexander Company and the Alexander sisters (Misses Essie, Rae, Gertrude, and Jeanette C. Alexander), besides others not involved in this appeal, to recover fractional undivided interests in three parcels of real estate in the city of La Grange, and for partition. The Bank recovered, under a directed verdict, a fractional interest in each parcel. The Alexander Company has appealed from the judgment as to one of these parcels (Lots 11 to 15 in Farm Lot 32), and the Alexander sisters have separately appealed as to

another parcel (Lot 259, Block 32). The judgment as to the third parcel, known as the Alexander Homestead, which adjoins Lot 259, is not questioned.

The Bank's title is derived from Jake Alexander, and is predicated upon an execution sale under a judgment it recovered against Jake and others May 2, 1934,— the same judgment involved in Alexander Co. v. First Nat. Bank, Tex.Civ.App., 119 S.W.2d 718, error dis., and Peter v. First Nat. Bank, Tex.Civ.App., 92 S.W.2d 1079. The issues involved in the two appeals are unrelated and will be separately considered.

As to the Alexander Company's appeal involving Lots 11 to 15:

The record title to this parcel stood in V. D. Alexander, a brother of Jake and of the Alexander sisters. V. D. died intestate in 1932 and Jake inherited a fractional interest in whatever title he held in the property. It was this fractional interest (32/272) which the Bank recovered. Lots 12 to 15 were deeded to V. D. in 1908, and Lot 11 in 1909. There has been no change in the record title subsequently to those deeds.

 The Alexander Company's asserted title is based upon the claim that V. D. held the property in trust for it by virtue of the facts that it was bought with funds furnished by the Alexander Grocery Company; that taxes, improvements, insurance and upkeep were all paid for by the Alexander Grocery Company; that it was in fact bought for the Alexander Grocery Company and the title taken in the name of V. D. as a matter of convenience. The Grocery Company made a general assignment for the benefit of creditors in July, 1936, and its title passed by mesne conveyances to the Alexander Company. Shortly after the purchase in 1908 and 1909 the Grocery Company went into actual, physical possession of the property. Its store buildings and warehouse were located thereon, in which it continuously during said period up to the time of the assignment conducted a wholesale grocery business. Its successors in title, including the Alexander Company, have continued such possession up to the date of trial. Such possession, of course, gave notice of its title to all the world. The record presents no issue of estoppel or of bona fide purchaser; the only issue being whether the evidence would support a finding that the Alexander Grocery Company was the bene-

ficial, that is, equitable, owner of the property, the legal title being in V. D.

The evidence upon this issue was quite similar to that in Alexander Company v. First Nat. Bank, supra. The chief points of difference were that here the books of the Grocery Company were not put in evidence as there; and that here the property in issue was in the actual, physical, open possession of the Grocery Company and its successors in title. The testimony amply supported the claim that the property was bought for the Grocery Company, paid for by it, and the improvements erected and taxes, insurance, and upkeep paid by it. The fact that the evidence came, in large measure, from interested witnesses affected only its weight, but did not militate against its probative value. Nor do the facts that the title was taken and the property assessed in V. D.'s name, that he executed a trust deed upon the property to secure a loan to improve it, that he was a stockholder in and employee of the Grocery Company, establish conclusively that the beneficial as well as the legal title was in him. These are all evidentiary circumstances to be considered and weighed by the triers of fact. The evidence was clearly sufficient to uphold a finding of the existence of a trust; and the issue thus raised should have been submitted to the jury.

 The claim of the Alexander sisters to Lot 259 is predicated solely upon the ten years' statute of limitations. This lot was acquired by Jake and V. D. by deed in 1904, and the record title remained in them up to the date of the execution sale. At one time there had been a factory on a part of this lot, but it had long since been removed. The lot, as stated, adjoined the Alexander homestead lots. These latter passed by the will of the mother of the sisters to her children, subject to the right of occupancy as a home by her unmarried children as long as they or any of them remained single; the will in this regard providing: "Item IV. I deeply appreciate the manner in which my children have helped me to maintain my home and keep my children around me. I hope you will each cherish the memory of the great pleasure and comfort you have given me by this form of living and devotion to me. I therefore entrust your keeping to each other, for it is my will and desire to be held inviolate, subject to their right to change its location, that my home shall be maintained and continued after my death

as it is now, and has been for the last years of my life, by my unmarried children so long as any of them shall remain unmarried."

The mother died in May, 1923. From the time of her death to that of the trial, the sisters continued to occupy the homestead property; and V. D., who never married, lived with them during all that time until his death in 1932, contributing to the family's support.

After the mother's death Lot 259 was used continuously as a part of the homestead. It was sodded, planted in shrubs and garden, provided with a garage and utility house, and generally used as a part of the homestead property. It was always assessed in the name of Jake and V. D. There is no evidence that any portion of the taxes was paid by any of the sisters. The limitation title of the sisters is predicated upon this occupancy, and the asserted fact that they claimed the property as their own. The following testimony of two of the sisters upon the subject of adverse claim gives a fair picture of the situation. Essie testified:

"Q. You don't claim title to it (Lot 259)? A. No, sir, except that we have been using it, my sisters and myself as our homestead.

"Q. You don't intend to claim the interest these children of Ida Alexander Loeb (heirs of V. D.) might have in the property, do you? A. I don't know that they have any interest in it.

"Q. If they still have an interest in it, you are not claiming it? A. No, sir, I don't want to claim anything that isn't mine."

Rae testified:

"Q. You four unmarried sisters are claiming that property (Lot 259) by virtue of your mother's will? A. Yes, sir.

"Q. And you have no other claim except that? A. No, sir.

"Q. Your mother didn't leave Lot 259 in her will? A. No, sir.

\* \* \* \* \* \*

"Q. Did Jake Alexander know you were claiming it? A. I don't know.

\* \* \* \* \* \*

"Q. You are using it with his consent, and it was agreeable to him? A. He never expressed himself.

"Q. He was satisfied, and it was agreeable with him for you girls to use it as a part of the homestead? A. Yes, sir.

"Q. And that is why you were using it? A. (No audible answer.)

"Q. You never did ask him for his consent did you? A. No, sir.

"Q. And he never did give his consent? A. No, sir."

Reduced to its ultimate residuum, the effect of the evidence is that the family home was kept intact by the unmarried children after their mother's death, just as she had provided in her will. The adjoining lot was used by them in connection with the home. V. D., owner of a half interest therein, was as much in possession of it as were his four sisters. This possession was with the tacit consent of Jake. V. D. was a co-tenant of Jake, and his possession inured to Jake's interest, absent notice, express or implied, to Jake that he was holding adverse to him. The record is wholly devoid of any substantial evidence of any adverse possession on the part of the sisters as to either of their brothers, Jake or V. D. Consequently, there was no substantial evidence in support of the plea of limitation, and the directed verdict was correct in that regard.

In so far as the trial court's judgment awarded appellee an interest in Lots 11 to 15, it is reversed and the cause in that regard is remanded for a new trial. In all other respects, the trial court's judgment is affirmed. Costs of appeal are assessed one-half against appellee and one-half against the Alexander sisters and their bondsmen.

Reversed and remanded in part, and in part affirmed.