**MARYLAND CASUALTY COMPANY,**
Appellant,

v.

**The GOLDEN JERSEY CREAMERY,**
Appellee.

No. 89.

Court of Civil Appeals of Texas.

Corpus Christi.

April 22, 1965.

Rehearing Denied May 13, 1965.

---

John C. Wilson, of House, Mercer, House & Brock, San Antonio, for appellant.

E. G. Henrichson, of Henrichson & Bates, Edinburg, for appellee.

SHARPE, Justice.

This appeal is from a judgment rendered against Maryland Casualty Company, appellant, defendant below, in favor of Golden Jersey Creamery, appellee, plaintiff below, for the amount of $8,278.00, which appellee sued for under a comprehensive general liability policy on account of a settlement in such amount made by it with Walter F. Long for damages to a tank-trailer used for hauling milk after appellant refused to recognize coverage in connection with such claim.

Appellant denied liability under exclusion (h) of its policy, reading in part as follows:

"(h) under coverage B, to injury to or to destruction of (1) property owned or occupied by or rented to the insured, or (2) except with respect to liability under side-track agreements covered by this policy, property used by the insured, or (3) except with respect to liability under such side-track agreements or the use of elevators or escalators at premises owned by, rented to or controlled by the named insured, property in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control * * *"

Coverage B of the policy is as follows:

"Property Damage Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

Two special issues were submitted to the jury. In answer to Special Issue 2 the jury found that the collapse of the tank in question was not the result of an unavoidable accident. Special Issue 1 and the jury answer thereto were as follows:

"Do you find, from a preponderance of the evidence, that the tank truck belonging to Walter F. Long, Jr., was not under the care, custody or control of The Golden Jersey Creamery, its partners, agents, or employees, at the time of the collapse thereof on April 13, 1960?

"You will answer this issue: 'It was not' or 'it was.'

"We, the Jury answer: It was not."

Appellant urges twenty-one points of error. The first fifteen points assert that, for various reasons, the trial court erred in overruling appellant's motion for instructed verdict at the close of the evidence in the case. Points sixteen, seventeen and eighteen assert error in the overruling of appellant's objections to Special Issue No. 1 of the court's charge. Points nineteen, twenty and twenty-one assert error in rendering judgment on the basis of Special Issue No. 1. Appellant's points raise questions of no evidence, insufficient evidence, that the jury answer is against the overwhelming preponderance of the evidence, and concerning the sufficiency of the finding on Special Issue No. 1 to support a judgment in favor of appellee.

We find no merit in such points of error and affirm the judgment.

Appellee operates a creamery in Edinburg, Texas. It maintained a raised concrete ramp on the outside of its building

which was on an incline to facilitate the unloading of milk from tank trucks. Walter F. Long, Jr., who owned the tank-trailer in question, was a contract hauler for a Milk Producers Association and he would pick up milk at different dairies and deliver it to appellee's dock at its creamery. The usual method of unloading the milk was for the driver of the truck to stop on said ramp and hand a hose and electric cord for operation of a pump on the tank to an employee of the creamery. It was necessary for a vent to be opened on the tank so that air could replace the milk when unloading and the driver of the truck usually manipulated the same. The damage to Mr. Long's tank-trailer involved in his claim which appellee paid to him under a settlement agreement was caused by the negligence of one of appellee's employees in unloading milk from said tank without properly venting it, causing it to collapse.

On the trial of the case three witnesses testified. They were Walter F Long, Jr., owner of said tank-trailer, Wesley Long, brother of Walter, who was the driver of the said tank-truck on the occasion when it was damaged, and Alfredo Salinas, the employee of appellee, whose negligence caused the said damage. The testimony of Wesley Long was, in substance, that on the occasion in question he had driven the tank-truck on to the unloading ramp at appellee's creamery, had left it there, with the keys in the ignition, and had gone to Falfurrias, Texas, at about 6:30 p. m., on Sunday evening, returning the following morning at about 7:30 a. m.; that the damage to the tank was then discovered by him. Alfredo Salinas testified that when he came to work at appellee's creamery about 4:00 a. m., he noticed Long's tank-truck on the ramp; that he needed the milk from it and he put the hose from the tank into a vat and plugged in the electric line to the pump in the usual way; that he thought he had adjusted the vent on the tank properly, but the wind must have blown it shut; that shortly thereafter the tank collapsed. The tank-truck was not moved from the place

where Wesley Long had stationed it by Salinas or anyone else. The testimony of Walter F. Long, Jr., among other things, was to the effect that he was not employed by appellee and had no contract with it and was not paid by it; that he had never authorized anyone at the creamery to unload his truck; that he had examined the damaged tank at about 7:30 a. m. on Monday morning and the top lid (used as a vent) was bolted down solid and, in his opinion, could not have been placed in such position after the tank caved in. The jury could have believed that Salinas had not opened the vent at all when he attempted to unload the milk.

The case of Maryland Casualty Company v. Hopper, 237 S.W.2d 411 (Tex.Civ.App. 1950, n.w.h.) is closely in point. In that case the insured was engaged in the work of connecting certain lines to a storage tank. His employee failed to close a valve which allowed a seepage of gas into the tank and when the line was heated with an acetylene torch the tank exploded. At page 416 of the opinion, the Court said:

"It (Tank #2) was not in the care, custody or control of appellee, but was merely necessary or incidental to his work of laying and connecting the tanks with the well and with the gathering pipe line. The tanks had been installed by the Mapp Tank Company and were supported by a foundation and an embankment. We understand they were so firmly attached to the realty as to become a part of it. Certainly it could not have been contemplated by the owners of the leasehold estate that such real estate should be placed in the care, custody or control of appellee during his operations. He was merely permitted to use the tanks as well as the surface of the leased property for the purpose of accomplishing the work he was employed to do."

The words "care, custody and control" have been held to mean "in charge of"

or "in charge" by the decisions. See Great American Indemnity Co. of New York v. Saltzman, 213 F.2d 743 (8th Cir. 1954), in which, at page 748, the Court said:

"While the word 'charge' has a very broad and varied meaning (McLoughlin v. Shaw, 95 Conn. 102, 107, 111 A. 62), a person or thing is not 'in charge of' an insured within the meaning of the policy unless he has the *right to exercise dominion or control over it.*" (Emphasis supplied by the Court).

In the Saltzman case the insured parked his airplane on an airstrip and noticed another plane nearby. He got into the other plane, experimented with the controls, accidentally started the motor, which caused the said plane to crash into a hangar, resulting in extensive damage to it. The insurance company defended on the ground that the plane was under the care, custody and control of the insured. The court held that the insured was a trespasser and did not have the care, custody or control of the plane; that custody and control meant to place in charge of and it was not so contemplated or intended in that case. The negligent acts of the insured were not excluded under such circumstances and the insurance company was held liable on its policy.

In the case of Meiser v. Aetna Casualty and Surety Company, 8 Wis.2d 233, 98 N. W.2d 919 (1959), a sub-contractor's employee, while plastering the walls and ceiling of a house, splashed plaster on its windows, which was later scraped off, but left the windows damaged. Suit by said sub-contractor against his liability insurance company was defended on the ground that he had the windows under his care, custody and control. At page 921 of the opinion the Court said:

"Where the property damaged is merely incidental to the property upon which the work is being performed by the insured, the exclusion is not applicable. * * * However, where the property damaged is under the super-

vision of the insured and is a necessary element of the work involved, the property is in the 'care, custody, or control' of the insured."

The court held that the windows were not under the supervision and control of the insured and that he could recover under his policy.

■ As in Maryland Casualty Co. v. Hopper, supra, other cases place emphasis on the fact that the property in question was merely incidental to the work being done. More than this is required in order that an insured may be found to have the care, custody and control of property. See McLouth Steel Corporation v. Mesta Machine Co., 214 F.2d 608 (3rd Cir. 1954); Cohen v. Keystone Mutual Casualty Co., 151 Pa. Super. 211, 30 A.2d 203 (1943); A. T. Morris & Company, Inc. v. Lumber Mutual Casualty Ins. Co., 163 Misc. 715, 298 N.Y.S. 227 (1937).

■ Appellant relies principally upon the case of Madden v. Vitamilk Dairy, Inc., 59 Wash.2d 237, 367 P.2d 127 (1961), which is distinguishable from the instant case. In Madden, it appeared that the driver would surrender to the dairy or creamery employees the possession, care and control of the milk tank-truck until it had been unloaded, washed, cleaned and returned to him. Such is not the case here. In this case, the fact that an employee of appellee would receive from the driver of the milk tank-truck a hose connected to the tank and an electric cord for supplying power to the pump on it, would not conclusively place the tank-truck in the care, custody and control of appellee. These steps were merely incidental to the receipt of milk by appellee, which was a necessary function in the operation of its business on the premises. Neither would the conduct of Salinas on the occasion of the damage to the tank-trailer here involved establish as a matter of law that it was in the care, custody and control of appellee. The trial court correctly submitted the controlling issue to the jury in this case and it was found favor-

ably to appellee. The evidence is sufficient to support such finding and it is not against the overwhelming weight and preponderance of the evidence so as to be manifestly wrong and unjust. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

The foregoing discussion disposes of appellant's points one through fifteen and nineteen through twenty-one, and the same are overruled.

■ Appellants' points sixteen, seventeen and eighteen, which assert error in overruling its objections to the court's charge, do not find support in the record because of the failure to comply with Rule 272, Texas Rules of Civil Procedure. At the close of the evidence counsel for appellant dictated certain objections to the charge of the court which are shown only in the Statement of Facts. The record does not show that such objections were transcribed and presented to the court so that he could endorse his ruling and official signature thereon, nor that same were filed with the clerk in time to be included in the transcript, as is required by such rule. Under such conditions appellant's objections are not properly preserved for review. Grabes v. Reinhard Bohle Machine Tools, Inc., 381 S.W.2d 395 (Tex.Civ.App., 1964, wr. ref., n. r. e.). However, it appears that with one exception the substance of the contentions involved in the objections made by appellant to the court's charge are included within other of appellant's points and have been considered by us. Such exception is the contention that the burden of proof was improperly placed on the single special issue submitted to the jury, hereinbefore set out. The said contention is not well taken and has not been urged by appellant on this appeal. For such reasons, appellant's points sixteen and seventeen are overruled.

■ Under point eighteen appellant argues that the trial court erred in not sustaining its objections to Special Issue No. 1 of the court's charge because an affirmative finding on such issue alone could not support a judgment in appellee's favor. Although this point is not in part properly preserved for review because, as heretofore stated, appellant's objections to the court's charge and the action of the trial court thereon are not properly shown by the record, there are additional reasons why the said point is not well taken. An objection that an issue included in the charge should not be submitted because it would not, alone or together with the submitted issues, support a judgment, is an inappropriate objection. The real complaint is of the failure to submit the additional issue which, together with the submitted issue, would support a judgment. Anderson v. Broome, 233 S.W.2d 901 (Tex.Civ.App. 1950, n.w.h); Dean v. Safety Casualty Co., 190 S.W.2d 750 (Tex.Civ.App.1945, error ref'd want of merit). Hodges on Special Issue Submission in Texas, Section 71, page 176. Although the verdict of the jury alone would not support the judgment rendered herein, the record shows that it is based in part upon a written stipulation entered into between the parties which supplies the remaining elements necessary to support appellee's recovery. Said stipulation, in substance, provides that the policy upon which this suit is brought was in full force and effect on April 13, 1960, when the collapse of the milk tank took place; that such collapse happened on the premises of appellee and was caused by the creation of a vacuum inside the tank created by a pump utilized for the purpose of unloading milk from it; that $8,278.00 shall be considered the damages suffered by appellee as a result of such collapse; that no mention should be made of such stipulation within the hearing of the jury, and that no issues should be submitted to the jury concerning the subject matter of such stipulation. The judgment affirmatively shows that it is based upon such stipulation as well as on the verdict; together, they furnish ample support for its rendition. Appellant's point eighteen is overruled.

The judgment of the trial court is affirmed.