Marshall A. HINES et al., Appellants,

v.

Mancle T. POINTER et al., Appellees.

No. 17617.

Court of Civil Appeals of Texas,
Fort Worth.

May 9, 1975.

Rehearing Denied June 13, 1975.

Dauphin Whitehead, Arlington, for appellants.

Brown & Tibbals, and Michael Tibbals, Dallas, for appellees.

## OPINION

BREWSTER, Justice.

This is a trespass to try title case. The property involved was 110 acres of land near Fort Worth consisting of an 80 acre tract and a 30 acre tract that adjoined. The plaintiffs were heirs of Andrew Jackson Pointer, who died in 1910, and the defendants were Marshall Hines, Evie Pointer, A. J. Pointer, and W. L. Pointer. The Pointer defendants were also heirs of Andrew Jackson Pointer.

Following a jury trial the court rendered judgment awarding a ⅛th interest in both tracts to the defendant, Marshall Hines, and awarding an undivided ⅞ths interest in both tracts to the heirs of Andrew Jack-

son Pointer, as tenants in common, but excluding the defendants, Evie Pointer, A. J. Pointer and W. L. Pointer from any recovery at all. This is an appeal by all of the defendants from that decree.

We affirm.

In defendants' 5th and 6th points of error they contend that the trial court erred in holding that, as a matter of law, under the undisputed evidence in this case, the heirs of Andrew Jackson Pointer (plaintiffs) were tenants in common as to both tracts of land, with the defendants, three of whom were also heirs of Andrew Jackson Pointer.

We overrule those two points of error.

There are two A. J. Pointers involved in the case. We will refer herein to the older one, who is now deceased, as Andrew Jackson Pointer, and to the younger one, a defendant here, as A. J. Pointer.

Plaintiffs alleged that a deed from J. J. Williams and wife conveying the 80 acre tract to Andrew Jackson Pointer, on November 12, 1903, is the common source of title of both plaintiffs and defendants to that tract.

Plaintiffs had alleged that Andrew Jackson Pointer and wife, M. J. Pointer, had acquired limitation title to both tracts here involved under the following statutes: Articles 5509, 5510, 5519 and 5519a, Vernon's Ann.Civ.St., and that the limitation title they had acquired was the common source of title of both plaintiffs and defendants to the 30 acre tract.

They alleged in the alternative that the limitation title that Andrew Jackson Pointer and his wife, M. J. Pointer, had acquired to the 80 acre tract was the common source of title of both plaintiffs and defendants to the 80 acre tract.

The undisputed evidence in the case showed the execution and delivery of that deed from J. J. Williams to Andrew Jackson Pointer and that it was filed for rec-

ord in the deed records of Tarrant County on November 12, 1903. The undisputed evidence showed that the record title to the 30 acres involved stood in the name of E. M. Williams by virtue of a conveyance made in 1896 by G. H. Smithee and wife to Williams. The record title to the 30 acre tract has never stood in the name of Andrew Jackson Pointer. Andrew Jackson Pointer died in November, 1910, and his will was probated in 1911 and the inventory of his estate listed a 100 acre farm out of the Susan Lynn Survey as an asset. The land involved here is located in that survey. Andrew Jackson Pointer devised his property to his wife, M. J. Pointer, for life and at her death what remained was to be divided equally among his 9 children. The widow of Andrew Jackson Pointer died in 1923.

It is undisputed that Andrew Jackson Pointer is the ancestor of all of the plaintiffs and that he went into possession of the entire 110 acres involved in 1903 openly claiming it as his own, farmed it, and stayed there until he died in 1910. From 1910 to 1919 the Andrew Jackson Pointer family continued to have exclusive adverse possession of that 110 acres, claimed title to it all, had it entirely enclosed in a fence, ran cattle and raised fruit on it during all of that time. The undisputed evidence showed that Andrew Jackson Pointer and his family held open, peaceable, adverse possession of the entire 110 acres from 1903 until 1919, farming and grazing it. In 1919 the family moved to West Texas, at that time leasing this 110 acre farm to a Mr. Williams for $75.00 a year until 1935. Out of the rent each year Mr. Williams, the tenant, paid the taxes and gave the balance of the rent to one of the Pointer heirs. This tenant, Williams, held open, continuous, adverse possession of the entire 110 acre farm for the Andrew Jackson Pointer family from 1919 to 1935, recognizing the Pointer family as owners of the land and paying rent to them.

■ The plaintiffs are in privity of estate with Andrew Jackson Pointer, because they were his descendants, and because of the will that he left. The widow of Andrew Jackson Pointer, by his will, was given a life estate in the farm. The remaindermen are in privity of estate with the decedent and may tack both the adverse possession of the decedent and of the life tenant so as to mature a limitation title. (150 A.L.R. 557, and cases there cited.)

The undisputed evidence shows that Andrew Jackson Pointer, was also the ancestor of the defendants, A. J. Pointer, W. L. Pointer, and Evie Pointer. Luther (Luke) Pointer was the son of Andrew Jackson Pointer and Mollie J. Pointer. He was also the husband of Evie Pointer and the father of A. J. Pointer and W. L. Pointer.

■ We hold that the trial court was correct in holding as a matter of law that before 1940 the heirs of Andrew Jackson Pointer and M. J. Pointer had acquired title to and owned both the 80 acre tract and the 30 acre tract as tenants in common. See 15 Tex.Jur.2d 160, Cotenancy.

The court in Corn v. First Texas Joint Stock Land Bank, 131 S.W.2d 752 (Fort Worth, Tex.Civ.App., 1939, writ ref.), said at p. 757: ". . . they were joint tenants in the entire 691 acres. Such relation is characterized by the joint ownership by them of an estate in the land, regardless of the extent, nature or tenure of the respective interests."

The heirs of Andrew Jackson Pointer and his wife, Mollie Pointer, under the undisputed evidence in the case, had acquired title to the 30 acre tract under the 10 year and 25 year limitation statutes by the year 1940. They acquired title to the 80 acre tract, as a matter of law, through the 1903 deed from J. J. Williams to Andrew Jackson Pointer, and by virtue of their being heirs of that grantee. Had that deed been defective in some way, the undisputed evidence is such that they have also acquired, by 1940, the title to the 80 acre tract by adverse possession under the 5, 10, and 25 year limitation statutes.

As hereinabove stated a deed had been introduced by plaintiffs dated November 12, 1903, executed by J. J. Williams and wife, conveying the 80 acre tract to Andrew Jackson Pointer. Plaintiffs contend that this deed was the common source of title of both plaintiffs and defendants to the 80 acre tract. The defendants then introduced a warranty deed dated February 28, 1902, executed by Andrew Jackson Pointer and wife, M. J. Pointer, conveying this 80 acre tract to one Sam Williams.

■ The defendants here contend that the doctrine of after-acquired title applied to that fact situation, the result being that when Andrew Jackson Pointer, and wife Mollie, again acquired title in 1903, that it immediately vested back into the Sam Williams who had been named as the grantee in that 1902 deed that they had executed. Defendants contend that because of that after-acquired title doctrine, the 1903 deed into Andrew Jackson Pointer of the 80 acre tract cannot be a common source of title of the parties to the suit to that tract.

We overrule that contention. The doctrine of after-acquired title does not apply in this situation.

No one in this case is claiming title to any of the land involved under or through Andrew Jackson Pointer's grantee in the 1902 deed (Sam Williams).

■ The rights or benefits afforded by the doctrine of after-acquired title would operate only in favor of the original grantee in the 1902 deed, Sam Williams, or in favor of any person holding or claiming title under him, no matter how remote the claim is, and the doctrine would bind the grantor in the 1902 deed and his heirs. Patton on Land Titles, Vol. 1, 2nd Edition, Sec. 215. The doctrine is based on estoppel.

Because none of the defendants in this case claim under Sam Williams, the grantee in the first or 1902 deed, the doctrine of after-acquired title has no application. It only operates in favor of the grantee in that earlier deed or in favor of one claiming under that grantee. Newton v. Easterwood, 154 S.W. 646 (Texarkana Tex.Civ.App., 1913, writ ref.), and Duhig v. Peavy-Moore Lumber Co., 135 Tex. 503, 144 S.W.2d 878 (1940).

We hold that this deed from J. J. Williams and wife, conveying the 80 acre tract to Andrew Jackson Pointer, was a common source of title of plaintiffs and defendants to that 80 acre tract.

The defendants, Evie Pointer, W. L. Pointer and A. J. Pointer were, as a matter of law, cotenants with the plaintiffs of the 110 acres involved here.

The defendant, Marshall Hines, is claiming the 80 acre tract under a 1967 deed from Evie Pointer, W. L. Pointer, and A. J. Pointer. He is claiming title to the 30 acre tract by virtue of a 1972 deed from the defendants, Evie Pointer, W. L. Pointer, and A. J. Pointer. By those two conveyances Hines acquired the interest that those three grantors had in the two tracts involved. If they only owned, on the dates of the two deeds, the interest in the two tracts that the three grantors in those deeds had by inheritance from Andrew Jackson and Mollie J. Pointer, then Mr. Hines also became a tenant in common with the heirs of Andrew Jackson and Mollie Pointer.

■ In their point of error No. 9, defendants contend that the trial court erred in holding that plaintiffs held a regular chain of title from the sovereign to the time of trial. We overrule that point because the record in this case indicates that the trial court made no such holding.

Defendants' point of error No. 15 is that the trial court erred in holding, as a matter of law, that the appellees held adverse possession of the 30 acre tract. We overrule that point. We are convinced, as we have hereinabove indicated, that the undisputed evidence in the case does show that the heirs of Andrew Jackson Pointer and Mol-

lie J. Pointer acquired title to the entire 110 acres involved here by adverse possession prior to 1940.

In addition to that, the trial court even submitted the question to the jury in special issue No. 1, and the jury answered the question adversely to the defendants. Issue No. 1 inquired: "Did the heirs of Andrew Jackson Pointer, including the Plaintiffs herein, and the Defendants, Evie Pointer, A. J. Pointer, and W. L. Pointer, and those under whom they claim, hold peaceable and adverse possession *of the land here involved,* cultivating, using or enjoying the same, for any period of ten (10) consecutive years before April 29th, 1967?" The jury answered the issue, "Yes." (Emphasis supplied.)

The submission of the adverse possession question to the jury removed all questions about the matter.

Defendants' 10th point of error is that the trial court erred in holding, as a matter of law, that plaintiffs had prior possession of the land. Their 11th point of error is that the court erred in holding, as a matter of law, that appellees had not abandoned the land.

We overrule both of those points of error.

■ In a trespass to try title suit, a plaintiff can recover by proving title in one of four ways, to-wit:

1. By proving a regular chain of conveyances from the sovereign;

2. By proving a superior title out of a common source;

3. By proving title by limitations; or

4. By proving title by prior possession, and that the possession had not been abandoned. See Land v. Turner, 377 S.W.2d 181 (Tex.Sup., 1964).

■ The defendants' 10th and 11th points of error only relate to the question

of whether plaintiffs had a right to the judgment they got by proving title under No. 4 above (prior possession without abandonment). A discussion of these two points is not material to our decision because we are holding that, under the evidence offered and the jury verdict in the case, the plaintiffs were entitled to their judgment on the theory that they have proved a superior title out of a common source.

In defendants' 12th point of error they urge that the trial court erred in holding, as a matter of law, that the 5 year statute of limitations did not begin to run in favor of defendant, Hines, at the time of the filing of the deed from Evie, W. L., and A. J. Pointer to defendant, Hines.

They urge in the 13th point of error that the trial court erred in holding that the deed from the three Pointer defendants to the defendant, Hines, conveying the 80 acres to Hines, was not a repudiation of the cotenancy between the three Pointer defendants and the other Pointer heirs.

We overrule both of those points.

As we interpret the record the trial court did not hold as a matter of law that the 5 year statute did not begin to run on the 80 acres when defendant, Marshall, filed his deed. If he had so held, he would not have submitted issue No. 2 to the jury, which read: "Has the Defendant, Marshall A. Hines, held peaceable and adverse possession of the eighty (80) acre tract, cultivating, using or enjoying the same, or any part thereof, and paying taxes thereon, and claiming under deed or deeds duly registered for any period of five (5) consecutive years before July 11th, 1972?" The jury answered the issue, "No."

The undisputed evidence showed that the three Pointer defendants came to defendant, Hines, who was an attorney, in 1967, seeking legal advice and services reference to clearing title to the 110 acre farm. These three Pointers ended up deeding to Mr. Hines the 80 acre tract as a fee for

his services in clearing the title to the 30 acre tract for them. Mr. Hines filed his deed in the Tarrant County deed records on May 9, 1967. This lawsuit was filed on July 11, 1972.

At the time the three Pointer defendants executed the 1967 deed to Hines purporting to convey to him the 80 acre tract, they were cotenants of that tract with the plaintiffs as a result of all being heirs of Andrew Jackson Pointer and his wife.

■ A cotenant can only convey his own interest in the common land, and cannot convey any part of the common property that is not his own. 15 Tex.Jur.2d 171, Cotenancy, Sec. 13, and authorities there cited. The effect of a conveyance of the whole tract is to give title to the grantee of only the undivided interest owned by that cotenant grantor. 15 Tex. Jur.2d 197, Cotenancy, Sec. 32. His rights are identical with that of the grantor.

■ In this case under the undisputed evidence in the case the plaintiffs (heirs of Andrew Jackson Pointer) and the three Pointer defendants (also heirs of the same man) were cotenants as to the entire 110 acre farm on the date in 1967 when those three defendants executed the deed purporting to convey all of the 80 acre tract to Hines. Therefore, the only part of the 80 acre tract that passed to Hines by this deed was the undivided interest that was owned in that tract at the time by these three grantors in the deed. By this transaction Hines became a cotenant of the 80 acres with the plaintiffs.

Mr. Hines' position advanced in this case is that he acquired title to the 80 acre tract under the 5 year limitation statute (Art. 5509, V.A.C.S.) during the interval between the time the deed to him was recorded on May 9, 1967, and July 11, 1972, the date the suit was filed. To be successful on appeal, Mr. Hines thus had to show that he acquired limitation title under the 5 year statute against all of his cotenants in

that particular interval of 5 years, 2 months and 2 days. He would have to show that limitations began running in his favor before July 11, 1967, in order to get his 5 years of adverse possession.

The possession of the 80 acre tract by the three Pointer defendants (who were tenants in common of the land with the plaintiffs) before their execution of the 1967 deed to Hines was not, under the undisputed facts of this case, adverse to the other tenants in common, the plaintiffs. King v. Hill, 141 Tex. 294, 172 S.W.2d 298 (1943).

At the time this deed to Hines was executed there was then in effect a one year written lease on the land held by some people named Grimsley. The lease covered the period from January 1, 1967, to December 31, 1967. This tenant lived on an adjoining farm and was in possession of the farm involved here under that one year lease and was using it to graze cattle. Hines expressly recognized the validity of this lease from his grantors to the Grimsleys. After Hines got his deed the tenant stayed on in possession. The occupancy of the farm was the same in 1967 after the Hines deed was executed as it was before the deed was executed. Hines testified that A. J. Pointer took him out and introduced him to the tenant and told her to thereafter pay the rent to him as the new owner. He said this occurred not long after the deed was executed on April 29, 1967. The tenant testified that her lease expired on December 31, 1967, and that A. J. Pointer brought Mr. Hines out to her house and introduced him to her about 3 or 4 months before the lease ended. At that time A. J. Pointer told the tenant that Hines had become owner of the land and to pay future rentals to him. If the tenant's testimony was correct then her introduction to Hines did not occur prior to July 11, 1967, and if the jury believed that testimony he could not have had 5 years adverse possession before the suit was filed.

■ The general rule is that a conveyance by one cotenant to a stranger to the title, by an instrument purporting to pass the entire title in severalty and not merely the grantor's interest, when followed by entry of such stranger, claiming under such deed, into actual and exclusive possession, amounts to a disseisin of the other cotenants, and that such possession if continued for the statutory period will ripen into title. Jones v. Siler, 129 Tex. 18, 100 S.W.2d 352 (Tex.Com.App., 1937). That Court went on to hold that the recording of the deed from the cotenant conveying the whole title of the land to the stranger plus the actual taking of possession of the land by the stranger gave the other cotenants constructive notice of the hostile character of the claim by the person in possession. The Court further held that the recording of the deed alone, without the taking of possession by the grantee in the deed, would not have constituted the required notice, because of the rule that one is not charged with notice by the registration of an instrument that is not in his chain of title.

■ The situation in this case is a little different from the case just referred to. Here the same persons were in possession after the deed to Hines was executed that were in possession before the deed was executed. The person in possession of the land remained the same during all of 1967.

The evidence shows that Mr. Hines met the requirement laid down in the Jones v. Siler case, supra, of receiving and recording a deed purporting to convey the whole tract to him more than five years before this suit was filed. The crucial date on this is July 11, 1967 (5 years before filing of the suit). The question is whether Mr. Hines met the third necessary requirement, i. e., made entry upon and took possession of the land.

The question to be decided at this point is: can a stranger to title rely on the continued possession, after the stranger records his deed, of a cotenant's (his grantor's) lessee in order to effect an ouster of the other cotenants?

We hold that the answer to the question is that he cannot rely on that alone and our authority for this holding is King v. Hill, 141 Tex. 294, 172 S.W.2d 298 (1943). In that case King and Denby were tenants in common. Denby lived on the land, paid taxes on it and farmed it. Denby deeded all of the land to Mobley and recorded the deed, but Denby and his family remained in possession. King, the cotenant, was given no actual notice of the conveyance. Nearly 15 years later Denby gave up possession of the land, and King became aware of Mobley's claim to title and sued Mobley in trespass to try title. Mobley claimed title under the 5 year limitation statute, claiming that there was an ouster and adverse possession by way of actual notice and possession through Denby, who had become Mobley's tenant. The court rejected that theory because there was no evidence that the cotenant, King, was given any notice that the possession by Denby, after he had executed the deed, was under a different claim of right from that on which it had rested before. The effect of the holding is that the landlord and the tenant must in some way give notice to the other cotenants that he is in possession under a different claim of right.

This case before us is analogous to those in which a cotenant stays in possession after deeding the whole property to a stranger, or the cotenant in possession claims under a deed that purports to convey the fee title to him, or a tenant seeks to assert limitation title against his landlord. All those cases have held that the stranger to the title must give the other cotenants actual notice of the claim or do acts which constitute actual notice to them. Johnson v. Dickey, 231 S.W.2d 952 (Austin, Tex.Civ. App., 1950, ref., n. r. e.); Golson v. Fielder, 2 Tex.Civ.App. 400, 21 S.W. 173 (1893, no writ hist.); Brooks v. Shaw, 159 S.W. 2d 206 (Galveston, Tex.Civ.App., 1942, ref., w. m.); and Alexander Co. v. First

Nat. Bank of La Grange, 123 S.W.2d 908 (Austin, Tex.Civ.App., 1939, no writ hist.).

Where a new lessee or owner is occupying the land, all the cotenants need to do is look and see that a stranger is in possession. The requirement of a visible appropriation would thus be met. If a cotenant looks and one is in possession of the land that has always been in possession with his consent, he is not thus put on notice of an adverse claim by or through the tenant.

We hold that the undisputed evidence in this case shows that Mr. Hines did not give to his cotenants, the plaintiffs herein, more than 5 years before this suit was filed, the actual notice that the law requires to start limitations to running. The possession of the tenant did not inure to his benefit until the plaintiffs, his fellow cotenants, were given notice that the tenant was holding the land adversely to them. The evidence showed that, although Mr. Hines had conversed with some of his cotenants after he had gotten his deed, none of them were ever told until shortly before this suit was filed that he was claiming title to all of the land adversely to them.

In all events, even if we are wrong in our conclusions expressed in the last paragraph, the question as to whether or not Mr. Hines acquired title by adverse possession under the 5 year statute was at best for Mr. Hines only a fact issue. When the tenant testified that she did not ever meet Mr. Hines until about 3 or 4 months before the 1967 rent was due on January 1, 1968, a fact issue was thus raised as to whether the tenant met Mr. Hines, recognized him as owner of the land, and began holding adverse possession of the land for him as his tenant prior to July 11, 1967. Those facts must have existed if Mr. Hines was to raise the issue as to whether he had title under the 5 year limitation statute. The jury answered special issue No. 2 against Mr. Hines, thus resolving the question of whether he acquired title under the 5 year limitation statute against him.

In their 7th point of error defendants contend that there is insufficient evidence to support the jury's answer to issue No. 2 and in their 8th point of error they urge that the jury's answer to issue No. 2 is against the great weight and preponderance of the evidence.

We overrule both of those points.

Issue No. 2 inquired: "Has the Defendant, Marshall A. Hines, held peaceable and adverse possession of the eighty (80) acre tract, cultivating, using or enjoying the same, or any part thereof, and paying taxes thereon, and claiming under deed or deeds duly registered for any period of five (5) consecutive years before July 11th, 1972?" The jury answered the question, "No."

We hold that the evidence was sufficient to support that jury answer and that the finding was not against the great weight and preponderance of the evidence.

In their 14th point of error defendants contend that the trial court erred in holding that plaintiffs held a superior title from a common source.

We overrule the point.

We have already shown that down to 1940 the plaintiffs and the three Pointer defendants and their predecessors were tenants in common of the entire 110 acre farm.

In about 1940 Luther (Luke) Pointer found out that some taxes were owed against the 110 acre farm in question and he heard that the farm would be sold for taxes. He was told that if he paid these past due taxes and thereafter kept the taxes paid up he would become the owner of the farm under a doctrine they called taxsteading property. He at that time paid $57.53 in back taxes on the farm and then rented it out continually each year until he died in 1958. This Luther (Luke) Pointer

was a son of Andrew Jackson Pointer, the husband of the defendant, Evie Pointer, and he was the father of defendants, A. J. and W. L. Pointer. During his lifetime Luther Pointer leased the farm out starting in about 1940, collected the rentals of $100 a year and paid the taxes as they fell due until he died in 1958. These taxes were less than the annual rent he collected. After he died, his son, A. J. Pointer, a defendant here, began handling the leasing of the farm and paying the taxes. Luther Pointer and, after he died, the members of his family owned interests in this farm as joint tenants with the other heirs of Andrew Jackson and Mollie J. Pointer. This relationship continued until they deeded their interests in the farm to Hines by their 1967 and 1972 deeds.

The undisputed evidence shows that at no time between 1940 and the date of their two deeds to Hines, did Luther Pointer and his wife and children give either actual or constructive notice to their other cotenants that they were making a claim to the land that was hostile to that of the other contenants. Before a cotenant can hold adversely to his cotenants it is necessary that such other cotenants receive notice of his hostile claim. 15 Tex.Jur.2d 189, Cotenancy, Sec. 26.

For the reasons stated the three Pointer defendants did not ever acquire any interest in this land by adverse possession as against their cotenants. Of course, they did not get title to the land by paying the past due taxes as was done in this case. The rentals they collected more than paid for the taxes on the land that they paid later.

The trial court correctly held that plaintiffs established a superior title from a common source to the ⅝ interest in the 110 acre farm that was awarded to them by the judgment appealed from.

In defendants' points of error Nos. 1 through 4, inclusive, they contend that the trial court, for the various reasons in those four points set out, erred in submitting special issue No. 1 to the jury.

We overrule those 4 points of error because the alleged errors they complained of were not properly preserved for appellate review.

Rule 272, Rules of Civil Procedure, prescribes the procedure that must be followed in order to preserve for appellate review the court's ruling on an objection made to a court's charge. It provides that objections to a court's charge that are not made and presented and preserved as prescribed in that rule are waived.

Rule 272 in substance provides the following: the objections must be presented to the court in writing before the charge is read to the jury. When the written objections have been so made and presented, if the court overrules them, he shall endorse his ruling on them and sign them officially. When so endorsed and signed the instrument will constitute a sufficient bill of exceptions to the ruling. The requirement that the objections to the charge shall be in writing will be sufficiently complied with if the objections are dictated to the court reporter in the presence of and with the consent of the court and opposing counsel before the charge is read to the jury and are later transcribed and the court's ruling and official signature endorsed thereon and filed with the clerk in time to be included in the transcript.

In this case the defense counsel dictated his objections here complained of to the court reporter who later transcribed them and included them in the statement of facts. Counsel for the parties attached to the statement of facts an agreement that it was a full transcript of the evidence given during the trial and the court reporter affixed his certificate to the statement of facts. The trial judge did not sign the statement of facts.

The record does not show that these objections, after being reduced to writing,

were presented to the trial judge so that he could see them in writing and endorse his ruling thereon, and sign them officially. They were not filed with the district clerk and are not included in the transcript. Because these requirements prescribed by Rule 272 were not complied with, defendants did not preserve the matters complained of in their first 4 points for appellate review. Their objections to the charge were waived.

Cases that support our ruling on defendants' first 4 points of error are: Kettle v. Smircich, 415 S.W.2d 935 (Corpus Christi, Tex.Civ.App., 1967, no writ hist.); State v. Turboff, 431 S.W.2d 953 (Houston, Tex. Civ.App., 1st Dist., 1968, no writ hist.); Big Three Welding Equipment Company v. Roberts, 399 S.W.2d 912 (Corpus Christi, Tex.Civ.App., 1966, ref., n. r. e.); and Maryland Casualty Co. v. Golden Jersey Creamery, 389 S.W.2d 701 (Corpus Christi, Tex.Civ.App., 1965, ref., n. r. e.).

The holding we have made on this point, under the facts of this case, is not changed by the provisions of Sec. (*l*) of Rule 372, T.R.C.P., as amended in 1967. See on this State v. Turboff, supra.

In each of their points of error Nos. 16, 17, 18, 19 and 20, the defendants contend that the trial court erred in refusing to submit their specially requested issues that are therein set out.

We overrule each of those points because the defendants did not properly preserve for appellate review any of the matters in those points complained of.

The record shows that immediately after the defense counsel got through dictating to the court reporter his objections to the court's charge, he then dictated to the reporter defendants' requested special issues. Sometime later (the record does not show when) these requested issues were transcribed by the reporter and placed in the statement of facts.

As far as the record shows these requested issues have never been presented in writing to the trial court for his consideration, the trial judge did not endorse his ruling on any such written requests, and he did not sign any written requested issues officially. They have never been filed in the clerk's office.

Rule 279, T.R.C.P., provides: " . . . Failure to submit an issue shall not be deemed a ground for reversal . . . unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment . . . ."

Rules 273 and 276 also provide in substance that a requested special issue must be in writing and in that form timely presented to the trial court for him to endorse his ruling and his official signature thereon.

Because the requested issues involved have never been requested in writing, and because the requested issues have never been tendered in written form to the trial court by the defendants for his consideration, the court's failure to submit such issues in the charge is not a ground for reversal of the case under the express provisions of Rule 279.

Because defendants did not make a proper request for the submission of the issues there is no basis for appellate review. T J Service Co. v. United States Fidelity & Guar. Co., 472 S.W.2d 168 (Corpus Christi, Tex.Civ.App., 1971, ref., n. r. e.; American Pozzolan Corp. v. Desert Trucking Co., 450 S.W.2d 433 (San Antonio, Tex.Civ. App., 1970, ref., n. r. e.); Benritto v. Fransen, 274 S.W.2d 758 (Galveston, Tex. Civ.App., 1955, no writ hist.); and Cudmore v. Richardson-Merrell, Inc., 398 S. W.2d 640 (Dallas, Tex.Civ.App., 1965, ref., n. r. e.).

The judgment is affirmed.