KA–HUGH ENTERPRISES, INC., et
al., Appellants,

v.

FORT WORTH PIPE & SUPPLY
COMPANY, Appellee.

No. 17627.

Court of Civil Appeals of Texas,
Fort Worth.

May 30, 1975.

Rehearing Denied June 27, 1975.

Dean Carlton, Dallas, for appellants.

Law, Snakard, Brown & Gambill, Fort Worth, and Fulbright & Jaworski, and Daniel K. Hedges, Houston, for appellee.

## OPINION

SPURLOCK, Justice.

Ka-Hugh Enterprises, Inc., hereinafter referred to as "Ka-Hugh" brought suit against appellee, Fort Worth Pipe & Supply Company, hereinafter referred to as "Fort Worth Pipe", for damages resulting from the alleged failure of an oil well casing installed in a well. Fort Worth Pipe sold and supplied to Ka-Hugh the casing used in the well. By amended petition additional plaintiffs were joined in the suit representing owners of the surface, royalty, and the mineral estate. Ka-Hugh alleged that it was the operator of the lease. It alleged that the casing supplied by Fort Worth Pipe was defective and that it collapsed causing the failure of the well. The plaintiffs' amended original petition asserted that Fort Worth Pipe had breached its implied warranty of fitness by supplying casing that was not suitable for the purpose for which it was intended.

Fort Worth Pipe filed a counterclaim for the value of the pipe it had supplied and sold to Ka-Hugh.

The jury found that the pipe supplied was suitable for the purposes for which it was intended. Consequently, a judgment was rendered that the plaintiffs take nothing

and that Fort Worth Pipe recover on its counterclaim.

We affirm.

Plaintiffs, by points of error Nos. 2 through 7, assert the court erred in submitting Special Issue No. 8 because there was no evidence, the evidence was insufficient, it was multifarious, unfair and confusing, did not name the agent involved, involved a question of law, and did not inquire into authority or scope of authority.

Plaintiffs assert that the casing sold to it by Fort Worth Pipe was defective and therefore the defendant breached its implied warranty of fitness for the purpose for which the casing was sold. Special Issue No. 2 and the jury's answer thereto is as follows: "Do you find from a preponderance of the evidence that the casing furnished was not suitable for the purposes for which it was intended? Answer: It was suitable."

Thus, on the above controlling issue the jury found that the pipe was suitable for its intended use.

At the conclusion of the evidence the parties stipulated that in the event the jury should find that the casing sold and furnished by Fort Worth Pipe to Ka-Hugh was not suitable for the purpose for which it was intended, then Fort Worth Pipe would be entitled to recover nothing. They further stipulated as follows:

"It is further stipulated and agreed that should the Jury find that such casing was suitable for the purposes which it was intended, then the said Fort Worth Pipe and Supply Company is entitled to recover of and from the said Ka-Hugh Enterprises, Inc. and Norman Levinson, jointly and severally, the sum of $14,193.29, plus interest at six percent per annum on such judgment from the date of such judgment until the date paid, plus foreclosure of its materialman's lien as recorded in Volume 259, Pages 234 through 239, in the Mechanic's Lien Records of Nueces County, Texas." The

parties recognized what is apparent, that is, that Issue No. 2 is the controlling issue.

Special Issue No. 8 is as follows: "Do you find from a preponderance of the evidence that prior to July 1, 1971, Ka-Hugh Enterprises, Inc., acting by and through its agent, employees and representatives, accepted the terms and conditions stated on Defendant's invoices and delivery tickets? Answer: We do."

The record reflects that Mr. Billy J. Neal was employed by Ka-Hugh to completely supervise the final stages of the drilling operations. Mr. Neal is a consulting petroleum engineer. There is no dispute that he was in complete charge of the drilling operations during the period of time here involved. He wrote the specifications for the casing, he was in charge of acidizing and all the other operations necessary to determine whether the well was a producer and, if so, to bring the well in as a commercial producer. He ordered the pipe involved. It was delivered to the location as directed. Delivery tickets were left in the bunkhouse. The same day Mr. Neal inspected the pipe involved. He inspected the delivery tickets and placed them in his file. Shortly thereafter invoices were mailed out from Fort Worth Pipe as had been the custom between Ka-Hugh and Fort Worth Pipe over a period of time prior to this occasion. These invoices contained language indicating that there was no warranty on the pipe and it was accepted with that understanding. No objection was ever made to the terms of the limitations of warranty up to the time of trial.

■ The trial court is authorized to submit the issue in the language quoted under the authority of Rule 277, Texas Rules of Civil Procedure, under the facts in this case.

■ We overrule each of these points of error for the additional reason that the alleged errors complained of were not properly preserved for appellate review.

Rule 272, T.R.C.P., prescribes the procedure that must be followed in order to preserve for appellate review the court's ruling on an objection made to a court's charge. It provides that objections to a court's charge that are not made and presented and preserved as prescribed in that rule are waived. Marshall A. Hines, et al. v. Mancle T. Pointer, et al., 523 S.W.2d 733 (Fort Worth Civ.App., May 9, 1975, not yet reported).

Rule 272 in substance provides the following: The objections must be presented to the Court in writing before the charge is read to the jury. When the written objections have been so made and presented, if the Court overrules them, he shall endorse his rulings on them and sign them officially. When so endorsed and signed the instrument will constitute a sufficient bill of exceptions to the ruling. The requirement that the objections to the charge shall be in writing will be sufficiently complied with if the objections are dictated to the court reporter in the presence of and with the consent of the court and opposing counsel before the charge is read to the jury and are later transcribed and the court's ruling and official signature endorsed thereon and filed with the clerk in time to be included in the transcript.

In this case the defense counsel dictated his objections here complained of to the court reporter who later transcribed them and included them in the statement of facts. Counsel for the parties attached to the statement of facts an agreement that it was a full transcript of the evidence given during the trial and the court reporter affixed his certificate to the statement of facts. The trial judge did not sign the statement of facts.

The record does not show that these objections, after being reduced to writing, were presented to the trial judge so that he could see them in writing and endorse his ruling thereon, and sign them officially. They were not filed with the district clerk and are not included in the transcript. Because these requirements prescribed by Rule 272 were not complied with, defendants did not preserve the matters complained of in their first 7 points for appellate review. Their objections to the charge were waived.

Cases that support our ruling on defendant's first 7 points of error are: Kettle v. Smircich, 415 S.W.2d 935 (Corpus Christi Civ.App., 1967, no writ hist.); State v. Turboff, 431 S.W.2d 953 (Houston Civ.App., 1st Dist., 1968, no writ hist.); Big Three Welding Equipment Company v. Roberts, 399 S.W.2d 912 (Corpus Christi Civ.App., 1966, ref. n. r. e.); and Maryland Casualty Co. v. Golden Jersey Creamery, 389 S.W.2d 701 (Corpus Christi Civ.App., 1965, ref. n. r. e.).

The holding we have made on these points, under the facts of this case, is not changed by the provisions of Sec. (1) of Rule 372, T.R.C.P., as amended in 1967. See on this State v. Turboff, supra.

Plaintiffs, by their points of error Nos. 8 through 14, assert that the trial court erred in refusing to permit plaintiffs to file a trial amendment alleging strict liability, whether Fort Worth Pipe was engaged in selling casing, in refusing to submit special issues on the theory of strict liability, in failing to submit issues on whether or not the product was unreasonably dangerous to the user, whether or not the casing reached the user without substantial change, whether the defective casing was the proximate cause of the well failure, and the granting of a partial instructed verdict.

The original petition was filed June 12, 1972, and alleged that the casing purchased from Fort Worth Pipe collapsed causing the loss of the hole, that it was the result of a defect in the casing and that the casing was not suitable for the purpose for which it was sold. On November 6, 1973, plaintiffs filed an amended petition alleging substantially the same as in its original petition. On April 30, 1974, plaintiffs filed a supple-

mental petition asking for the recovery as originally prayed for. The case proceeded to trial on July 15, 1974, with no additional pleadings having been filed by plaintiffs. Toward the end of the trial, and after the plaintiffs had rested, they attempted to file a trial amendment seeking recovery on the theory of strict liability. The court refused to allow the amendment ruling that it was "untimely and too late."

■ The trial court is vested with discretion to deny or allow trial amendments under the terms of Rule 66, T.R.C.P. The order of the court denying the filing of a trial amendment will not be set aside in the absence of a clear showing that the court abused its discretion. Lord v. Insurance Company of North America, 513 S.W.2d 96 (Dallas Civ.App., 1974, no writ hist.).

The court did not abuse its discretion in not allowing the filing of the trial amendment.

■ The court is not required to submit issues raised by the evidence where there is no pleadings to authorize a submission of such issues. Parker v. Gulf, Colorado & Santa Fe Railway Co., 401 S.W.2d 265 (Tyler Civ.App., 1966, no writ hist.). Since plaintiffs failed to plead strict liability, it was not error for the court to refuse to submit issues in accordance with such theory.

It was admitted that Fort Worth Pipe was engaged in selling casing and that such casing was delivered to Ka-Hugh without substantial change; therefore, no issue was required on admitted facts.

■ The record is silent as to whether there was a partial instructed verdict. Plaintiffs have offered no argument or authorities to support this point, thereby waiving it. Bowen v. East Texas Hospital Foundation, 400 S.W.2d 843 (Tyler Civ.App., 1966, ref., n. r. e.).

We overrule each of these points.

Plaintiffs, by their points of error Nos. 15 through 17, allege error of the court in refusing to admit into evidence logs from wells in the area where plaintiffs' well was drilled.

These logs were offered in evidence for the purpose of showing the potential recovery of oil had the well been a good commercial producer. This evidence was offered on the issue of damages.

■ Since the jury found there was no liability on the part of Fort Worth Pipe, then the exclusion of evidence pertaining to damages could not affect the jury's verdict on the issue of liability. Therefore, when the jury found that there was no liability, then the erroneous exclusion of evidence, if such evidence was erroneously excluded, on the issue of damages was immaterial and harmless. Rule 434, T.R.C.P.; Montgomery v. Pagan, 324 S.W.2d 251 (Waco Civ.App., 1959, no writ hist.).

In their point of error No. 18 plaintiffs contend that the trial court erred in admitting evidence showing that the witness Levinson had been convicted of filing a false income tax return in 1973 because same was offered in evidence solely for the purpose of prejudicing plaintiffs' case. We overrule this point.

Norman Levinson, as an individual, owned an interest in the lease here involved. He was also president of Ka-Hugh. After the pipe had been delivered to this particular well Levinson signed a written guaranty guaranteeing this debt and some prior unpaid debts owed to Fort Worth Pipe. Levinson was not present during the trial. Portions of his deposition were offered in evidence by the defendant.

Levinson was questioned about the amount of the debt owed to Fort Worth Pipe. He testified that this debt was not paid because the pipe was defective. He further testified that although he had had the delivery tickets and invoices in his possession over this long period of time he was

not aware of anything concerning them except the quantity of pipe and the price. The invoices on their face showed that the pipe was sold subject to all the terms, provisions and conditions set out on the reverse side of the delivery tickets and the pipe was received in good order and condition. The reverse side of the delivery tickets in paragraph 9, in bold type, contained the terms of the sale stating that there were no warranties extending beyond the description on the face of the invoice, no warranty of merchantability, and that all goods were sold " 'as is' ". It further provided that any claim for breach of warranty must be made within 90 days and the liability of the seller was limited to the cost of repair or an obligation to replace the merchandise.

Levinson further testified that he had received delivery tickets and invoices from this company before but had never read the terms and conditions set forth in the invoice. He had never protested these terms to the seller. He was also questioned about the knowledge of the terms of the delivery tickets and invoices that may have been known by Ka-Hugh's general counsel and secretary of the corporation, its engineers, and other executives of Ka-Hugh. He was also questioned about not paying prior bills incurred with the defendant. He was questioned thoroughly about the agency and scope of authority of the petroleum engineer in charge of this well and other officials of the company. He also admitted that he owned Graham Royalty, which had an interest in the lease, and is a named plaintiff.

After Levinson's testimony was read to the jury the court admitted into evidence an exhibit offered by the defendant showing that on July 31, 1973, Norman Levinson pleaded "not guilty" to income tax evasion and was found guilty to subscribing to false tax returns. He was sentenced to 3 years on count one and 3 years on count two, to run concurrently. Plaintiff objected to this exhibit on the grounds that it was immaterial and was not adverse to the plaintiff, Levinson did not testify except by deposition, its admission into evidence was an abuse of discretion and was highly prejudicial, and such conviction was not sufficient for impeachment. The method of proving the conviction was not challenged.

Rule 182, T.R.C.P., expressly provides that an adverse witness may be examined by the party calling the witness, is not bound by such testimony, and shall have the right to impeach such witness and the testimony of such witness.

■ Some courts have placed limitations upon this rule but none of these limitations apply to the facts in this case. Rule 182 generally has been construed to apply to parties named in the petition and answer and to certain agents of the named corporate party. Even in cases applying a strict construction to the rule courts have indicated that the named parties to the suit may be impeached. Wheatheart Feeders, Inc. v. Pletcher, 453 S.W.2d 902 (Amarillo Civ.App., 1970, writ dism.). For a discussion of the applicable law see Vol. 25, Baylor Law Review, p. 283, "Adverse Examination: A Consolidated Rule For The Hostile Witness in Texas."

■ The record evidence of a felony conviction involving moral turpitude, that is not too remote in time, is a proper method of impeaching the incredibility of a witness. The Texas Supreme Court in Compton v. Jay, 389 S.W.2d 639 (Tex.Sup., 1965) has held that a witness may be impeached by proving his conviction of a crime involving moral turpitude. Wigmore's Treatise on Evidence, 3rd Ed., Sec. 926, states that forgery, cheating, and the like are crimes involving moral turpitude. We overrule this point.

Plaintiffs, by their points of error Nos. 19 and 20, assert that the court erred in admitting into evidence the opinion evidence of Cohen as to the cause of the well failure over the objection that it was based on

information not in evidence, and the court erred in refusing to strike the opinion evidence of Cohen.

The witness Neal had testified in great detail concerning his attempt to make a commercial producer out of the well. He was the petroleum expert in charge of this phase of the operation. He testified that various electric logs were run, the results of such tests, and the location of the sand where oil was located. The surface casing and bottom of the well were cemented. Casing was run and the casing was perforated at the area indicating there was oil producing sand. Some oil was produced. In order to increase the production of oil 500 gallons of acid was injected into the well under high pressure. After the well was acidized a pump stuck in the well. Tubing had also been run. Hurricane Beulah had blown in and the well site was covered with water. Acid was allowed to remain in the well for 4 weeks when normally it would have been extracted rather quickly. A pump for the purpose of circulating the well was not brought in, probably because of the high water. Instead a swabbing operation took place and thereafter sand and shale appeared in the well. The 9th swab became stuck. The well then produced salt water.

There was other evidence in the record that normally the frio sand, that was here involved, is not acidized. Normally the sand and shale would be washed out through the circulating process. This and other evidence was in the record from various witnesses and exhibits.

Defendant's witness, Mr. Cohen, a petroleum engineer, was asked a hypothetical question and asked to assume facts that were in the record and to base his opinion thereon. He did so and expressed the opinion that the acid had attacked the lime substance in cement and had created channels which had permitted the salt water and shale to enter the casing and prevented the well from being a commercial producer.

On cross-examination the witness testified that he had examined depositions of witnesses who testified during the trial but whose depositions were not read to the jury, and had examined other material. He testified that he had read everything that was submitted to him but did not testify, in answer to the hypothetical question, that he had taken anything else into consideration in answering the question except the facts stated in the hypothetical question. No motion to strike the testimony of Cohen was made by plaintiffs. Thereafter, Cohen testified at length concerning his opinion as to the cause of the well failure as being the reaction of the acid, described above, and other errors committed by Ka-Hugh's engineer during the course of attempting to bring the well in.

On redirect examination, toward the end of Cohen's testimony, he testified that in his opinion the cause of the well's failure was the tubing became stuck because of sand and shale which had entered the casing because the acid job broke down the cement and caused channeling. This opinion was based upon the facts given him by means of a hypothetical question based upon evidence properly in the record. These facts had been detailed to him early in his testimony. The same objection was made after the witness answered the question. No motion was made to strike his answer nor for the Court to instruct the jury not to consider the answer.

It was stated in Battles v. Adams, 415 S.W.2d 479 (Austin Civ.App., 1967, ref., n. r. e.) that, "Since the objection to this testimony was made after its admission and no motion to strike having been made, the objection was waived and the testimony was before the court for all that it is worth."

This Court in the case of Poole v. State Highway Department, 256 S.W.2d 168 (Fort Worth Civ.App., 1953, writ dism.), speaking through Chief Justice Massey, stated that: "Where testimony is in the record before

objection thereto is made and sustained and no motion is made to strike it out, it is before the appellate court for all it is worth. 3–B Tex.Jur., p. 294, § 877. Likewise, testimony before the jury before objection thereto is made and sustained is still before them until they are instructed not to consider it." See 56 Tex.Jur.2d 518, "Trial", Sec. 174 (1964), "Motions To Strike . . Necessity", for supporting authority.

We overrule each of these points.

Each of appellants' points of error has been considered and each is overruled.

The judgment is affirmed.