**D. W. DURHAM and Rose Durham, Appellants,**

v.

**UVALDE ROCK ASPHALT COMPANY, Appellee.**

No. 16283.

Court of Civil Appeals of Texas, San Antonio.

May 14, 1980.

Rehearing Denied June 11, 1980.

Allan K. Dubois, Lang, Cross, Ladon, Boldrick & Green, San Antonio, for appellants.

William P. Dobbins, Dobbins, Harris & Gonzalez, Stephen P. Allison, Jess M. Irwin, III, Sawtelle, Goode, Davidson & Troilo, San Antonio, for appellee.

## OPINION

KLINGEMAN, Justice.

This is a suit by Uvalde Rock Asphalt Company (Uvalde Rock) against D. W. Durham and Rose Durham (Durhams) on a guaranty agreement.[1] Trial was to a jury who, in answer to the only special issue submitted, found: (1) the sum of $38,335.61 is owed by the Durhams to Uvalde Rock under the guaranty agreement; (2) reasonable attorney's fees for services performed for Uvalde Rock is $4,000. The trial court entered judgment for Uvalde Rock against the Durhams in the principal amount of $38,335.61, plus attorney's fees in the amount of $3,000. The Durhams appeal from this judgment.

A chronological summary of the events leading up to this suit is as follows:

Jan. 31, 1975—Bill Durham and his wife signed a contract and agreement with appellee. Among other things, this agreement required that the debtor keep the property free from other liens, and that there would be no adverse liens on the collateral.

Jan. 31, 1975—Appellant and wife executed a guaranty agreement with appellee, guaranteeing all indebtedness incurred by Bill Durham.

Feb., 1975—Appellee began doing business with Bill Durham with $18,000 of "stocking inventory" to be paid on an open account basis.

Aug., 1976—Upon learning Bill Durham was in arrears on his account, appellants gave appellee oral notice of termination of the guaranty agreement. It is undisputed that no written notice of termination was given. At about this same time Bill Durham and appellee instituted a new payment plan calling for inventory purchases on a c.o.d. basis with an additional ten per cent which was to be applied to amounts past due. It is contested as to whether appellants knew and/or agreed to this new payment plan. In this same month appellee found a financing statement on file since 1973 on R & R's inventory in favor of State Bank of East Fort Worth. It is disputed as to whether both appellee and appellants knew of this financing statement.

May, 1977—Appellee stopped doing business with R&R. The value of the unopened saleable inventory was disputed but the shipment was refused by appellee because of the previously filed financing statement. Appellee sued both the principal obligors, Bill Durham and his wife, and the guarantors, appellants.

Oct., 1977—A summary judgment was rendered against Bill Durham and his wife for $38,335.61, and no appeal was perfected as to this judgment. During the trial on the merits of the case before us, the appellants requested a trial amendment on the defense of mutual mistake, contending that neither party to the guaranty agreement knew of this previously filed financing statement and that, if they had known of it, the guaranty agreement would not have been made. Appellee protested that there was no evidence to support such trial amendment and that it constituted a surprise and was

---

1. Uvalde Rock also sued William D. Durham, d/b/a R & R Installation Supply Company (R & R), and a summary judgment was entered for Uvalde Rock against William D. Durham from which no appeal has been perfected. William D. Durham, who is also referred to as Bill Durham, is a son of appellants.

prejudicial. The trial court refused to permit the filing of the trial amendment.

Dec., 1978—The jury found that appellants owed $38,335.61 and attorney's fees of $4,000. The judge decreased the attorney's fees to $3,000.

By nine points of error appellants assert that the trial court erred in (a) refusing to permit filing of their requested trial amendment on mutual mistake; (b) refusing to submit certain special issues submitted by them; (c) in submitting certain other special issues; (d) in refusing to grant appellants' motion for instructed verdict; (e) in rendering judgment for appellee in the principal amount of $38,335.61; and (f) in awarding attorney's fees to appellee in the amount of $3,000.

## MUTUAL MISTAKE

Appellants assert that the trial court erred (1) in refusing to allow the filing of a trial amendment asserting the defense of mutual mistake, (2) in refusing to submit appellants' requested issue on mutual mistake.

■ It is undisputed that the pleading upon which appellants went to trial did not assert the defense of mutual mistake. Mutual mistake is an affirmative defense which must be pleaded or it is waived. Rule 94, Tex.R.Civ.P.; *Petrey v. Buckner & Sons*, 280 S.W.2d 641, 642 (Tex.Civ.App.— Waco 1955, writ ref'd n. r. e.). Appellants contend that the testimony of both parties raised the issue of mutual mistake because the undisputed evidence demonstrated that if both parties had known of the existence of the prior financing statement given by the debtor, Bill Durham, they would not have entered into the guaranty agreement and that it was an error not to permit the trial amendment or to submit the requested special issue on mutual mistake. They further assert that the testimony raised mutual mistake of fact as a matter of law, *Nelms v. Cox*, 327 S.W.2d 785, 787 (Tex.Civ.App.— Eastland 1959, writ ref'd n. r. e.); that a mutual mistake as to the same material fact, held by both parties, is an affirmative defense which will void one's obligations

under a contract, *Petrey v. Buckner & Sons*, 280 S.W.2d 641, 643 (Tex.Civ.App.—Waco 1955, writ ref'd n. r. e.); and that the failure to grant a trial amendment where appropriate constitutes an abuse of discretion, *Vermillion v. Haynes*, 147 Tex. 359, 365, 215 S.W.2d 605, 609 (1948).

Appellee asserts that there is not one shred of evidence to indicate that knowledge of the previous financing agreement given by Bill Durham would have caused Uvalde Rock not to have entered into the guaranty contract with appellant, and that the evidence is to the contrary.

■ The permitting or refusing to file a trial amendment is within the sound discretion of the trial court and unless it clearly appears that such discretion has been abused, its order permitting or refusing a trial amendment will not be disturbed on appeal. *City of Houston v. Riggins*, 568 S.W.2d 188, 194 (Tex.Civ.App.—Tyler 1978, writ ref'd n. r. e.); *City of Houston v. LeBlanc*, 562 S.W.2d 20, 22 (Tex.Civ.App.— Waco 1978, writ ref'd n. r. e.); *Burnett v. File*, 552 S.W.2d 955, 957 (Tex.Civ.App.— Waco 1977, writ ref'd n. r. e.); *State v. Beever Farms, Inc.* 549 S.W.2d 223, 225 (Tex.Civ.App.—San Antonio 1977, writ ref'd n. r. e.); *Simon v. Watson*, 539 S.W.2d 951, 958 (Tex.Civ.App.—Waco 1976, writ ref'd n. r. e.); *Myers v. Cliff Hyde Flying Service, Inc.*, 325 S.W.2d 841, 848 (Tex.Civ. App.—Houston 1959, no writ).

■ It is not an abuse of discretion to deny leave to file a trial amendment which would change the factual basis of the lawsuit, and which would probably be prejudicial to the opposing party. *Lord v. Ins. Co. of North America*, 513 S.W.2d 96, 101 (Tex. Civ.App.—Dallas 1974, writ ref'd n. r. e.). Moreover, a court does not err in denying permission to file a trial amendment when the record shows a lack of diligence. *Coffey v. Fort Worth & Denver Railway Co.*, 285 S.W.2d 453, 457 (Tex.Civ.App.—Eastland 1955, no writ); *Westinghouse Electric Corp. v. Pierce*, 153 Tex. 527, 531, 271 S.W.2d 422, 424 (1954).

It is to be remembered that there is not just one contract involved in this dispute, but two: (1) the contract between Bill Durham, the debtor, and Uvalde Rock; and (2) the guaranty agreement between D. W. Durham and wife, Rose Durham, and Uvalde Rock. In the case before us we are only concerned with the guaranty obligations. Appellants rely on the testimony of an employee of Uvalde Rock that he would not have entered into the agreement with Bill Durham had he known of the previously existing financing statement. There is testimony that such employee had no authority to bind Uvalde Rock, and that any such decision would have had to be made by the president of Uvalde Rock. The fact, that such employee would not have entered into the agreement with Bill Durham, the debtor, is not proof of the fact of mutual mistake on the instrument here involved (the guaranty agreement). There is no evidence to indicate that knowledge of the previous financing statement given by Bill Durham would have caused Uvalde Rock not to enter into the guaranty contract and logically the existence of a prior financing statement given by Bill Durham made the guaranty contract all the more crucial in Uvalde Rock's decision to advance goods to Bill Durham.

The mistake must relate to the subject matter of the contract involved and not to a matter that is collateral or incidental to that contract. To enable a party to a written contract to be relieved from liability thereunder on the ground of mutual mistake of fact, the mistake in question must deal with a material part of the contract itself. That is, the mistake must involve the subject matter of the contract and the substance thereof. It may not be related to a mere collateral matter. *Brown-McKee, Inc. v. Western Beef, Inc.*, 538 S.W.2d 840, 845 (Tex.Civ.App.—Amarillo 1976, writ ref'd n. r. e.).

In our opinion, the evidence at its best indicates unilateral mistake. Mutual mistake was not raised by the evidence.

Based upon the record, we conclude that the trial court did not abuse its discretion in refusing to allow filing of the trial amendment on mutual mistake.

In view of our holding that the trial court did not abuse its discretion in not permitting the filing of the trial amendment, we need not discuss appellants' point of error that the trial court erred in refusing to submit the special issue on mutual mistake. In any event, we do not find anything in the record to show that such special issue was ever presented to the trial court for its consideration in accordance with the provisions of Rule 279, Tex.R. Civ.P. Such rule provides in substance that failure to submit any issue shall not be deemed grounds for reversal unless its submission in substantially correct wording has been requested in writing and tendered by the party complaining of the judgment. Rules 273 and 274, Tex.R.Civ.P., in effect, require that a request for a special issue shall be made separate and apart from the party's objection to the court's charge, that the requested special issue must be in writing and in that form timely presented to the trial court for him to endorse his ruling and official signature thereon. Since appellant did not make a proper request for the submission of such special issue, there is no basis for appellate review. *Hines v. Pointer*, 523 S.W.2d 733, 742 (Tex.Civ.App.—Fort Worth 1975, writ ref'd n. r. e.); *T J Service Co. v. United States Fidelity & Guar. Co.*, 472 S.W.2d 168, 173 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n. r. e.); *American Pozzolan Corp. v. Desert Trucking Co.*, 450 S.W.2d 433, 434 (Tex.Civ.App.—San Antonio 1970, writ ref'd n. r. e.).

### INSTRUCTED VERDICT

By three points of error appellants complain that the trial court erred in overruling appellants' motion for instructed verdict because (a) the creditor and primary debtor altered the method of payment without the consent of the grantor, (b) appellee failed to accord payment credit on the guaranteed portion of the open account first, and (c) the guaranty contract is unconscionable.

■ A preemptory instruction is warranted only when the evidence is such that no other verdict can be rendered and the winning party is entitled to judgment as a matter of law. *White v. White*, 141 Tex. 328, 331, 172 S.W.2d 295, 296 (1943); *Ormsby v. Travelers Indemnity Co. of Rhode Island*, 573 S.W.2d 281, 283 (Tex.Civ.App.—Waco 1978, no writ).

■ The rule generally is that the plaintiff is entitled to a directed verdict when reasonable minds can draw only one conclusion from the evidence. The task of an appellate court in such a case is to determine whether there is evidence of probative force to raise fact issues on material questions presented. The court must consider all the evidence, in the light most favorable to the party against whom the verdict was instructed, disregarding all contrary evidence and inferences. *Henderson v. Travelers Ins. Co.*, 544 S.W.2d 649, 650 (Tex.1976); *Echols v. Wells*, 510 S.W.2d 916, 919 (Tex.1974). When reasonable minds may differ as to the truth of controlling facts the issue must go to the jury. *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978); *Najera v. Great Atlantic & Pacific Tea Co.*, 146 Tex. 367, 370, 207 S.W.2d 365, 366 (1948); *Santos v. Guerra*, 570 S.W.2d 437, 438 (Tex.Civ.App.—San Antonio 1978, writ ref'd n. r. e.).

■ (A) Appellants argue that Bill Durham, the debtor, and Uvalde Rock altered the method of payment without the guarantors' consent and that this discharged the grantors as a matter of law, citing *McKnight v. Virginia Mirror Co.*, 463 S.W.2d 428 (Tex.1971).

The guaranty contract here involved signed by appellants expressly provided: "The obligation incurred herein by the undersigned shall not be discharged or diminished by the fact that . . . with or without notice to the undersigned, or either of them, subsequent alterations may have been made in the terms or methods of payment . . . ."

In *First Nat. Bank of El Paso v. Int'l Sheep Co.*, 29 S.W.2d 513 (Tex.Civ.App.—El Paso 1930, writ ref'd), the question involved whether or not a guarantor was discharged by an increase in the interest rates charged on certain promissory notes. The court said:

The guarantors placed no such limitation in the guaranty contract, but instead expressly agreed and bound themselves by all the terms and conditions of any note or notes signed or to be signed by the sheep company to the bank, and the only limitation in the guaranty is as to the amount of $20,000 . . . . . The interest of any subsequent note or notes of the sheep company involving the indebtedness guaranteed, as we view the guaranty, was to be calculated on the rate of interest expressed in any subsequent note. We think the trial court was in error in his conclusion from his findings as to the effect on the liability of the guarantors by reason of the charge [sic] in the rate of interest in the subsequent note, and the judgment based on such conclusions. We agree with appellees' insistence that a contract of guaranty is strictly construed, and that any material alteration in the indebtedness guaranteed, made without their consent, will release the guarantor. All of the authorities so hold. We need not review them. But, as here, where the guarantors, in advance, expressly in the guaranty contract waive notice, and agree and bind themselves by all the terms and conditions contained in any note or notes, and by agreement made themselves party to such note or notes, the courts must construe and give effect to the guaranty as made. To do otherwise would interrupt and make uncertain such commercial transactions.

29 S.W.2d at 517.

Here, the alteration in the method of payment was authorized by the parties in the original contract and in the guaranty agreement. In addition, there is evidence that the new method of payment was known to the guarantors and agreed to by the guarantors, including testimony by D. W. Durham himself. Another witness testified unequivocally that D. W. Durham

agreed to the implementation of the new plan. Under such testimony as to the agreed modification as to the method of payment and the additional fact that such change or alteration was authorized by the guaranty contract, there is no such alteration of the contract as would constitute a discharge of the guarantors.

(B) Appellants also urge that they should have been granted an instructed verdict because the evidence shows that certain payments were made by Bill Durham for which he was given credit, but which appellee did not credit the guaranteed portion of the account first; that it has long been the law in Texas that where payments were made on a running account, after a guaranty has expired, such later payments must be applied on the indebtedness secured by the guarantor and not on that subsequently contracted for and that in a case of a long and running account, payments must be credited to the oldest portion of the account first as a matter of law.

■■■■■ Appellee asserts that since the alteration of method of payment requiring Bill Durham to pay on a c.o.d. basis, with an additional ten per cent to be applied on the preexisting indebtedness, was authorized by the guaranty contract and was approved by Bill Durham, the debtor, and D. W. Durham, the guarantor, the method of crediting the guaranteed portion of the account, and the amounts of credit were proper. While the general rule is that when a contract does not specify how payments shall be applied to a running account, payments shall be applied to the oldest portion of the account, the general rule is here not applicable since the creditor Uvalde Rock and the debtor Bill Durham agreed to a new payment plan designating the method in which payment was to be applied, and the guarantors agreed to this change. Under these conditions, the payments were correctly applied pursuant to their agreement. *Champlain Oil & Refining Co. v. Chastain,* 403 S.W.2d 376, 389 (Tex.1965); *Watson v. Cargill, Inc., Nutrena Division,* 573 S.W.2d 35, 39 (Tex.Civ.App.—Waco 1978, writ ref'd n. r. e.).

■■■ (C) Appellants also urge that the trial court erred in refusing to grant appellants' motion for instructed verdict because the guaranty agreement was unconscionable under the provisions of Tex.Bus. & Comm.Code Ann. § 2.302 (Vernon 1968). In support of this contention, they rely on evidence that the agreement was drafted by attorneys for Uvalde Rock on their standard form of agreement and was signed by relatively unsophisticated individuals without legal advice, and that the contract was unbelievably lopsided.

We disagree. The contract provided for the termination of such contract by the guarantor at any time by simply sending a written notice of termination to Uvalde Rock. No such notice was ever sent. There is no evidence that the guarantors did not understand the guaranty contract or were in any way forced to enter into such guaranty contract. There is evidence that the debtor was the son of the guarantors and that D. W. Durham was interested in the son's business and worked in the business.

The trial court did not err in refusing to grant appellants' motion for instructed verdict.

## SPECIAL ISSUE SUBMISSION AND OBJECTIONS TO THE CHARGE

By one point of error appellants complain that the trial court erred in refusing to submit appellants' requested issue inquiring as to the oral termination of the guaranty agreement in August, 1976.

We have carefully searched the record and are unable to find where any such special issue was requested in accordance with the terms and provisions of Rules 273, 276 and 279, Tex.R.Civ.P.

Rule 279, Tex.R.Civ.P., provides in part as follows: ". . . Failure to submit an issue shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording has been requested in writing and tendered by the party complaining of the judgment; . . . ."

Rules 273 and 276 also provide in substance that a requested special issue must be in writing and in that form timely presented to the trial court for him to endorse his ruling and official signature thereon.

As far as the record before us indicates, the requested issue complained of here has never been presented in writing to the trial court for her consideration; the trial court did not evidence her ruling on any such written request and she did not sign any such written request officially; and no such requested special issue was filed with the Clerk.

Since appellants did not make a proper request for submission of the issue, there is no basis for appellate review. *Hines v. Pointer*, 523 S.W.2d 733, 742 (Tex.Civ.App. —Fort Worth 1975, writ ref'd n. r. e.); *T J Service Co. v. United States Fidelity & Guar. Co.*, 472 S.W.2d 168, 173 (Tex.Civ. App.—Corpus Christi 1971, writ ref'd n. r. e.); *J. Weingarten, Inc. v. Scott*, 456 S.W.2d 266, 269 (Tex.Civ.App.—Houston [14th Dist.] 1970, no writ); *American Pozzolan Corp. v. Desert Trucking Co.*, 450 S.W.2d 433, 435 (Tex.Civ.App.—San Antonio 1970, writ ref'd n. r. e.); *Preston State Bank v. Nat'l Union Fire Ins. Co.*, 320 S.W.2d 184, 185 (Tex.Civ.App.—Dallas 1958, no writ). Appellants' point of error No. 7 is overruled.

By two points of error appellants assert that the trial court erred in (a) submitting Special Issue No. 2 where there was no evidence that any attorney's fees had been incurred prior to termination of the guaranty agreement, and (b) submitting Special Issue No. 1 without instructing the jury to consider all lawful offsets and credits.

Appellee asserts that appellants' points of error were not properly preserved for appellate review under the Texas Rules of Civil Procedure, citing numerous cases including *Rodriguez v. Garcia*, 519 S.W.2d 908, 911 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.); *Hines v. Pointer*, 523 S.W.2d 733, 742 (Tex.Civ.App.—Fort Worth 1975, writ ref'd n. r. e.).

Rule 272, Tex.R.Civ.P., prescribes the procedure that must be followed in order to preserve for appellate review the court's ruling on an objection made to a court's charge.

Rule 272, as amended in 1976, reads as follows:

The charge shall be in writing, signed by the judge, and filed with the clerk, and shall be a part of the record of the cause. It shall be submitted to the respective parties or their attorneys for their inspection, and a reasonable time given them in which to examine and present objections thereto, which objections shall in every instance be presented to the court in writing, or be dictated to the court reporter in the presence of the court and opposing counsel, before the charge is read to the jury. All objections not so presented shall be considered as waived. The judge shall announce his rulings thereon before reading the charge to the jury and shall endorse his rulings on the objections if written or dictate same to the court reporter in the presence of counsel. Objections to the charge and the court's rulings thereon may be included as a part of any transcript or statement of facts on appeal and, when so included in either, shall constitute a sufficient bill of exception to the rulings of the court thereon. It shall be presumed, unless otherwise noted in the record, that the party making such objections presented the same at the proper time and excepted to the ruling thereon.

In the case before us counsel for appellants on October 26, 1978, dictated his objections here complained of to the court reporter in the presence of the court and opposing counsel. The court reporter later transcribed them with other material and they purportedly are a part of the statement of facts by an instrument designated "Defendant's Motion for Trial Amendment, Defendant's Motion for Instructed Verdict, Plaintiff's Motion for Instructed Verdict, Objection to the Court's Charge." Such instrument is dated May 21, 1979, and contains the court reporter's certificate of that

date that she in shorthand reported such proceedings and that the foregoing pages contain a true and correct transcription of her shorthand notes taken on such occasion. Such writing also contains a statement by the attorneys that such writing is a full, true and correct transcription of the proceedings had of the above entitled cause at the place and time thereon shown. The trial court judge did not sign this purported statement of facts.

This purported statement of facts is a conglomeration of various motions, requests, objections, and comments by counsel and trial judge. The only objections we can find in this instrument as to the court's charge are as follows: Special Issues Nos. 1 and 2 were first objected to by appellants' counsel, without giving any reason. Thereafter, Special Issue No. 1 was objected to on the grounds that there was no evidence or insufficient evidence to support such issue. Such issue was then objected to for not including the words "excluding attorney's fees, if any." Special Issue No. 2 was objected to on the grounds that there was no evidence or insufficient evidence to support such issue. At the conclusion on the hearing which is found in an instrument herein designated as "Defendant's Motion for Trial Amendment, Defendant's Motion for Instructed Verdict, Plaintiff's Motion for Instructed Verdict, Objections to the Court's Charge," the trial court overruled all objections made.

█ Assuming for the purpose of this opinion that such objections were properly preserved for review by this court, we overrule all of appellants' points of error as to the court's charge as submitted. We have heretofore held that there is sufficient evidence to support the submission of both Special Issue No. 1 and Special Issue No. 2. Appellants' only other complaint is of the failure of the court to include in Special Issue No. 1 the words "excluding attorney's fees, if any." The charge as submitted inquires as to what sum of money is owed by the Durhams to Uvalde Rock in accordance with the guaranty agreement. The Special Issue contains this instruction: "In

Answer to Special Issue No. 1, do not include an amount for attorney's fee, if any." The special issue as submitted gives appellants substantially what they requested and meets their objections, and clearly shows the jury that attorney's fees are not to be included in the sum of money, if any, awarded to appellee. The entire charge as submitted sufficiently satisfies all objections made by appellants and the special issue as submitted is proper. The record before us presents no reversible error to the charge.

█ Appellants' contention that the trial court erred in submitting Special Issue No. 1 without instruction to the jury to consider all lawful offsets and credits is subject to the same objections hereinabove discussed. The failure of a court to submit a definition or explanatory instruction is not grounds for reversal unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment. Tex.R.Civ.P. 279; *State v. Harrington*, 407 S.W.2d 467, 479 (Tex.1966); *Yellow Cab and Baggage Co. v. Green*, 154 Tex. 330, 333, 277 S.W.2d 92, 93 (1955); *Olivares v. Porter Poultry & Egg Co.*, 523 S.W.2d 726, 729 (Tex.Civ.App.—San Antonio 1975, no writ); *McNutt v. Qualls*, 433 S.W.2d 521, 524 (Tex.Civ.App.—Dallas 1968, no writ); *Wilson v. City of Port Lavaca*, 407 S.W.2d 325, 331 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n. r. e.); *Crowell-Gifford Furniture Co. v. Cloutman*, 276 S.W.2d 539, 551 (Tex.Civ.App.—Beaumont 1955, writ ref'd n. r. e.). Appellants failed to comply with the requisites of Rule 279.

## OFFSETS AND CREDITS

Appellants' Point of Error No. 8 complains that the trial court erred in rendering judgment for appellee in the principal amount of $38,335.61 when appellants were entitled to certain credits as a matter of law.

After Uvalde Rock and Bill Durham stopped doing business certain goods were tendered to Uvalde Rock by D. W. Durham which were refused by Uvalde Rock. D. W.

Durham testified that the tendered items were worth between $20,000 and $30,000, and a credit manager for Uvalde Rock testified to a value of about $10,480. Appellants assert that there was a misapplication of security in not giving credit for the goods tendered; that this constitutes a defense to the guarantor to the extent of the value of the misapplication; and that the trial court should have credited the value of such goods as a matter of law.

Alternatively, they assert that if they were not entitled to such offset as a matter of law they were entitled to jury consideration specifically focusing on such offset or credit.

The goods in this case were not tendered by the debtor, Bill Durham, but by the guarantor. Basically, the tender was refused by Uvalde Rock because Bill Durham, the debtor, had previously encumbered the collateral contrary to the provisions of a security agreement, and the goods here involved were covered by a previously filed financing statement in Tarrant County, Texas, by the State Bank of East Fort Worth approximately one and a half years prior to the guaranty agreement.

Under certain circumstances a purchase money security agreement may be superior to a previously filed security agreement if the requirements provided for by the Texas Business and Commerce Code are properly satisfied. Basically, the subsequent purchase money creditor must timely and properly file and perfect his security agreement and must timely and properly notify any prior holders. The basis for appellee's refusal to accept the goods tendered was that they were subject to a prior existing security agreement held by the bank on the same goods which in effect was a superior lien to any lien held by Uvalde Rock; that the bank was entitled to satisfy its lien from any inventory held by Bill Durham; and that if Uvalde Rock had accepted the goods it would have been liable to the bank for the amount of Bill Durham's indebtedness to the bank to the extent of the value of the inventory received.

The matter of offset is an affirmative defense on which appellants had the burden of pleading and proof. It was appellants' burden to show that the bank's lien was not a superior lien to that of Uvalde Rock because, if the bank's lien was a superior lien, appellee would be placing itself in jeopardy by accepting such tendered goods and could be responsible for Bill Durham's indebtedness to the bank to the extent of such inventory. Appellants did not meet their burden. There is no proof in the record that (a) Uvalde Rock had ever filed a financing statement as required by the Texas Business & Commerce Code on the goods involved, (b) the bank had any notice of Uvalde Rock's interest in the inventory, or (c) the bank's lien was ever released. *See In re Samuels*, 526 F.2d 1238 (5th Cir. 1976), cert. den. *Stowers v. Mahon*, 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976); *Borg-Warner Acceptance Corp. v. Wolfe City Nat'l Bank*, 544 S.W.2d 947, 951 (Tex.Civ.App.—Dallas 1976, no writ); Tex.Bus. & Com.Code Ann. §§ 2.401(a), 2.403, 2.507, 2.511, 9.204(a), 9.312(e) (Vernon 1968).

The trial court did not err in entering judgment on the jury's answer to Special Issue No. 1 where the evidence did not establish appellants' entitlement to any credit as a matter of law.

Appellants also complain that the trial court erred in refusing to submit an issue or instruction concerning offsets and credits. As hereinbefore discussed, appellants' complaint as to the court's charge, both as to submission of a requested special issue and any instruction, were not properly preserved for appellate review, and were waived.

## ATTORNEY'S FEES

Appellants' sixth point of error asserts that the trial court erred in submitting Special Issue No. 2 where there was no evidence that any attorney's fees had been incurred prior to the termination of the guaranty agreement in August, 1976.

This is a no evidence point of error and is governed by the applicable rules pertaining

thereto. *State v. Vargas*, 419 S.W.2d 926, 927 (Tex.Civ.App.—San Antonio) *writ ref'd n. r. e. per curiam* 424 S.W.2d 416 (Tex. 1968); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.L. Rev. 361, 362 (1960).

Appellants urge that under the wording of the guaranty agreement they were not liable for any attorney's fees because these attorney's fees were incurred after the guaranty contract was terminated, and there is no evidence that any attorney's fees were incurred prior to the purported termination.[2] In the alternative, they assert that, if it was their burden of establishing termination, they were deprived of doing so by the trial court's refusal to submit an issue on termination.

 We have concluded that appellants' Point of Error No. 6 is without merit for the following reasons: (a) the guaranty agreement was never canceled or terminated as provided in the contract; (b) appellants' suggested construction of the contract as to attorney's fees is unwarranted; (c) there is a fact issue as to the amount of attorney's fees incurred; and (d) since the agreement between Bill Durham, the primary obligor, and Uvalde Rock provides for attorney's fees and since the guaranty covers any and all indebtedness that the primary obligor may owe, the attorney's fees are included as a part of the guaranteed debt. *Mayfield v. Hicks*, 575 S.W.2d 571, 576 (Tex.Civ.App.—Dallas 1978, writ ref'd n. r. e.); *Gubitosi v. Buddy Schoellkopf Products, Inc.*, 545 S.W.2d 528, 538 (Tex.Civ. App.—Tyler 1976, no writ); *Young v. J. F. Zimmerman & Sons, Inc.*, 434 S.W.2d 926, 927 (Tex.Civ.App.—Waco 1968, writ dism'd); *McGhee v. Wynnewood State Bank*, 297 S.W.2d 876, 884 (Tex.Civ.App.— Dallas 1957, writ ref'd n. r. e.).

We hold that the trial court properly concluded that attorney's fees were recoverable from the guarantors. Appellants' Point of Error No. 6 is overruled.

 By cross point, appellee asserts that the trial court erred in reducing the amount of attorney's fees awarded by the jury from $4,000 to $3,000. We agree. Rule 301, Tex.R.Civ.P., provides in substance that the judgment is to conform to the pleadings, the nature of the case proved, and the verdict; provided, that the court may upon motion and notice disregard any Special Issue Jury Finding that has no support in the evidence. The record before us does not disclose any such motion to disregard any such jury finding. Under Rule 301, Tex.R.Civ.P., the trial court is not empowered to disregard a jury finding on its own initiative and in the absence of a motion. *S. Pac. Transp. Co. v. Allen*, 525 S.W.2d 300, 304 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ); *Texas Compensation Ins. Co. v. Matthews*, 510 S.W.2d 640, 645 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ); *Republic Bankers Life Ins. Co. v. Herring*, 463 S.W.2d 743, 744 (Tex. Civ.App.—Waco 1971, no writ); *McPherson v. Black*, 346 S.W.2d 615, 616 (Tex.Civ.App. —Waco 1961, writ ref'd n. r. e.); *Beal v. Great American Indemnity Co.*, 322 S.W.2d 399, 402 (Tex.Civ.App.—Texarkana 1959, no writ); *Christopherson v. Whittlesey*, 197 S.W.2d 384, 385 (Tex.Civ.App.—Beaumont 1946, writ ref'd).

There is ample evidence in the record to support an award of $4,000 and we find no basis under the record to reduce the amount of attorney's fees awarded by the jury.

All of appellants' points of error have been considered and all are overruled.

The judgment is reformed so as to provide for recovery of attorney's fees in the amount of $4,000. As so reformed, the judgment is affirmed.

---

**2.** The guaranty contract in substance provides that it may be canceled by the guarantor by written notice, and specifically provides that such guaranty agreement shall remain in force and effect until receipt by Uvalde Rock of written notice by registered mail of such termination. The guaranty contract further provides that upon receipt of such written notice as aforesaid, the guarantor shall have no obligation to pay any indebtedness incurred after the date such notice is received, although the guarantor still shall be liable on such guaranty for all indebtedness incurred on or prior to such date, and that the term "indebtedness" as used therein shall include reasonable attorney's fees when incurred and interest when due.