COMMUNITY DEVELOPMENT CON-
STRUCTION CORPORATION, Wood-
lands Industrial Building Company, Inc.,
Timberlock Industrial Building Compa-
ny, Inc. and United States Fire Insur-
ance Company, Appellants,

v.

FLEETWOOD CONSTRUCTION COM-
PANY, INC., Harry G. Black, d/b/a
Parmer Steel Company, Appellees.

No. 18068.

Court of Appeals of Texas,
Houston (1st Dist.).

July 15, 1982.
Rehearing Denied Sept. 16, 1982.

Michael L. O'Brien, Houston, for appel-
lants.

William Slusser, Houston, Russell Sera-
fin, Galveston, for appellees.

Before WARREN, PRICE and DUG-
GAN, JJ.

ON MOTION FOR REHEARING

WARREN, Justice.

This opinion is substituted in place and
stead of the original opinion issued on May
20, 1982.

This is an appeal from a jury verdict
awarding compensatory and exemplary
damages for the breach of a building con-
tract.

## THE PARTIES

Appellant Community Development Construction Corporation (CDCC) is a construction company which employed appellee Fleetwood Construction Company, Inc. (Fleetwood) by a written subcontract to perform most of the work in the erection of two warehouse buildings in Montgomery County. Woodlands Industrial Building Company, Inc. (Woodlands) and Timberlock Industrial Building Company, Inc. (Timberlock) are the owners of the two warehouse buildings. United States Fire Insurance Company (U.S. Fire) entered into a bonding indemnity agreement with the owners after liens were filed by Fleetwood and Harry G. Black, d/b/a Parmer Steel Company (Parmer Steel). Parmer Steel, under a subcontract with Fleetwood, erected the steel superstructure necessary to the construction of the two buildings.

## THE DISPUTE

On May 1, 1974, CDCC, the prime contractor, entered into a subcontract with Fleetwood whereby Fleetwood would supply all labor, materials, equipment and supervision necessary to the construction of two warehouses located in an area called The Woodlands in Montgomery County. The contract entered into was that type commonly called a "cost plus contract" in the building industry. Fleetwood was to be paid the cost of its construction plus an amount equal to 7% of its cost; such amount was not to exceed $790,242. Payment of 90% of the sums due Fleetwood for completed work was to be made by the 10th day of the following month; the 10% retained was to be paid 30 days after the completion of all work required by the contract. Fleetwood and its subcontractor, Parmer Steel, began the work under the contract and were paid the sum of $411,-832.80. In the early part of September 1974, a dispute arose. CDCC refused to make the payments which Fleetwood claimed it was due for its work performed in August, alleging that Fleetwood failed to perform the work according to its obligations set forth in the contract. As a result

Fleetwood ceased construction. On September 9, a meeting was held and as a result thereof an agreement was reached whereby Fleetwood agreed to correct any defects and CDCC agreed to pay the August invoice. Fleetwood resumed construction, but after a few days it left the job permanently because it had not received payment of the August invoice.

## THE PLEADINGS AND THE LAWSUIT

Fleetwood sued CDCC, Woodlands, Timberlock and U.S. Fire, the indemnitor, for breach of contract and for breach of the oral agreement of September 9, asking for compensatory as well as punitive damages. CDCC denied the breaches and filed a counterclaim against Fleetwood alleging numerous breaches of the contract by Fleetwood. On July 1, 1975, Parmer Steel filed a Plea in Intervention seeking payment of its invoice for its steel work and seeking a foreclosure of the lien it had perfected on the property. On October 12, 1979, an agreement was reached between appellants and Fleetwood whereby the dispute made the basis of the suit would be settled. In accordance with the agreement, appellants paid Fleetwood the sum of $15,000 and Fleetwood executed a written release in full satisfaction and discharge of any claim it had against appellants arising from the subcontract.

On October 12, 1979, a final judgment was entered in this cause decreeing that Fleetwood and Parmer take nothing on their actions against appellants and that CDCC take nothing on its suit against Fleetwood.

On October 30, 1979, Parmer Steel filed a Motion for New Trial alleging that there was a mistaken understanding that Parmer Steel's claim had been satisfied when in fact it had not. On November 5, 1979, an order was signed setting aside the final judgment insofar as it pertained to Parmer Steel's plea in intervention. This caused the judgment pertaining to the claims between Fleetwood and appellants to become interlocutory.

On April 7, 1980, Fleetwood filed a motion to set aside the judgment as it pertained to the claims between it and appellants.

On June 2, 1980, the court entered an order setting aside the judgment of October 12, 1979, as it pertained to Fleetwood and appellants.

On October 17, 1980, appellants filed a supplemental answer wherein it plead the release and payment in accord and satisfaction of the claims asserted by Fleetwood.

The Judge of the 189th District Court heard all motions and signed all orders prior to trial. The Judge of the 11th District Court presided over the trial on the merits and heard all post-trial motions.

At trial, the Release was offered into evidence without objection and Mr. Fleetwood testified that he executed the Release and was paid the consideration stated therein. However, he further testified that pursuant to the trial court's order of June 2, 1980, he returned the $15,000 to appellants, and they refused to accept it.

The case was submitted to the jury by 22 special issues inquiring of the jury whether (1) CDCC waived certain portions of the contract, (2) whether CDCC modified the contract, (3) whether CDCC ratified certain changes in the contract, (4) whether CDCC made certain representations to Fleetwood regarding the responsibilities of third parties for certain work and testing, (5) whether Fleetwood relied on these aforementioned representations and whether appellants were estopped to require compliance with the contract by Fleetwood because of the representation, (6) whether Fleetwood performed the required work in a good and workmanlike manner, (7) whether CDCC and Woodlands falsely promised at the September 9 meeting to pay the August invoice, (8) whether this promise was made with the intention of inducing or persuading Fleetwood to return to the jobsite and perform additional work, (9) whether Fleetwood returned to the job, did additional work and incurred costs in reliance on the aforementioned promise, (10) whether CDCC misrepresented to Fleetwood that it would take responsibility for the proper placement of the fill dirt, (11) whether CDCC intended to induce Fleetwood to rely on the misrepresentation regarding the placement of the fill dirt, (12) whether Fleetwood relied on this misrepresentation and whether Fleetwood's reliance on the misrepresentation caused it damage, (13) whether Fleetwood was entitled to exemplary damages, and (14) whether Fleetwood breached the contract by failing to complete the work in a manner contemplated by the contract.

Each of the jury's issues was answered favorably to appellees and unfavorably to appellants.

The jury awarded Fleetwood $100,000 exemplary damages, $137,248.45 for work it completed but for which it was not paid, $30,000 for a bonus it would have earned under the contract had it been allowed to complete the contract and $33,900 for reasonable attorney fees. The jury awarded Parmer Steel $12,675 for attorney fees.

## THE APPEAL

Appellants bring 16 points of error which urge that:

(1) It is entitled to judgment as a matter of law by reason of the release which bars appellee's cause of action,

(2) there is no evidence or alternatively there is insufficient evidence to support the jury's findings that CDCC made false representations to Fleetwood,

(3) the evidence is legally and factually insufficient to support a finding that Fleetwood was entitled to exemplary damages,

(4) as a matter of law Fleetwood was not entitled to exemplary damages because the alleged torts were not independent of the breach of contract,

(5) the evidence was legally and factually insufficient to support the jury's findings of compensatory damages,

(6) the court erred in admitting into evidence appellees' exhibits (a summary of records) because the exhibits were hearsay and appellees did not lay a proper predicate for their introduction, and

(7) as a matter of law there was no basis for allowing Parmer Steel to recover its attorneys fees under art. 2226, V.A.C.S.

## THE OPINION

The question is whether the release was a bar to appellees' cause of action.

■ Unless set aside or canceled, a valid settlement agreement and a release constitute a complete bar to any later actions based on matters included in the settlement agreement covered by the release. *Atkins v. Womble,* 300 S.W.2d 688 (Tex.Civ.App.— Dallas 1957, writ ref'd n.r.e.).

In our case, the release was timely pled as a bar to appellee's causes of actions. At trial, its execution was proved as well as the payment of consideration for its execution. Fleetwood never entered any pleas in defense of or sought affirmative relief from the effect of the release. Fleetwood attempted to file a trial amendment during the trial to allege mutual mistake but the court refused to allow it. By failing to do so Fleetwood, in effect, relinquished its right to any defenses or pleas it may have had with reference to the release. *Womble v. Atkins,* 314 S.W.2d 150 (Tex.Civ.App.— Dallas 1958, aff'd 160 Tex. 363, 331 S.W.2d 294); *Ellis v. Woods,* 453 S.W.2d 509 (Tex. Civ.App.—El Paso 1970, no writ).

Appellees contend that the settlement agreement and the resulting release were undisputably based on a mutual mistake of fact and that this was twice found as a matter of law.

The two instances wherein appellees contend that the release was found as a matter of law to be based on a mutual mistake follow.

First, prior to the settlement of October 12, 1979, Mr. O'Brien, the attorney for appellants, talked with Mr. Serafin, the attorney for Parmer Steel, and was told by Mr. Serafin that Parmer Steel had been paid in full for its work on the project. Mr. O'Brien then relayed this information to Mr. Slusser, the attorney for Fleetwood. In consideration of the sum of $15,000, Fleetwood executed a release in favor of appel-lants, which release held appellants harmless from any claim or causes of action arising from the project in question. Parmer Steel was not a party to this release. Fleetwood, appellants, and Parmer Steel presented the court with take nothing judgments signed by all attorneys, which the court signed on the same day. Within 30 days Parmer Steel discovered that it had not been paid and filed a motion to set aside that part of the judgment pertaining to it. This motion was granted and a similar motion filed by Fleetwood some eight months later was also granted. At this time the judgments had been aside, and the law suit was pending, but no action had been taken to set aside the release. It is appellees' position that the court's setting aside of the judgment also operated to set aside the underlying release. We disagree.

■ Releases and consent judgments are separate and independent contracts, unless there is an agreement to the contrary, and both are independently effective to bar causes of action relinquished therein. *Stewart v. Mathes,* 528 S.W.2d 116 (Tex. Civ.App.—Beaumont 1975, no writ). Neither of the orders setting aside the consent judgment of October 12, 1979, purported to set aside the underlying release nor could the court in this case have given such relief because the issue was not properly before it for consideration. The phrase in the order setting aside the take nothing judgment, as it pertained to Fleetwood, stating that all payment made by appellees to Fleetwood, pursuant to the agreed judgment shall be refunded, would not have the effect of also ordering a refund of any consideration paid pursuant to the release because the release and the judgment are two separate instruments. If Fleetwood contends otherwise, then it was incumbent on it to plead and prove this was the purpose or intent of the order and that the court was empowered to make such an order.

■■ Second, Fleetwood contends that the release was established to be invalid, as a matter of law, by reason of the hearing held while the jury was deliberating on the issues submitted to it by the court's charge.

We cannot agree with this contention because the issue of mutual mistake is one that must be put into issue by pleadings. *Durham v. Uvalde Rock Asphalt Company,* 599 S.W.2d 866 (Tex.Civ.App.—San Antonio 1980, no writ); *Ellis v. Woods,* supra. At trial, the judge assumed that the judge who heard the motion to set aside the judgment set aside the release as well as the judgment, and also assumed that since all parties to the release believed that Parmer Steel had been paid when the release was signed, that in law, this constituted a mutual mistake of fact. Throughout the proceedings, appellants resisted the theory and fact of a mutual mistake. The release was executed by Fleetwood and appellants. Appellants were not parties to the contract between Parmer Steel and Fleetwood. Any monies received by Parmer Steel for its work on the project were to come from Fleetwood under their written contract. Only Parmer Steel and Fleetwood were in a position to determine the amount due under their contract since appellants were not a party to it. Mr. O'Brien, the attorney for CDCC, inquired of Mr. Serafin, the attorney for Parmer Steel, whether Parmer Steel been paid and was assured that it had. This information was relayed by Mr. O'Brien to Mr. Slusser, attorney for Fleetwood. We are not convinced that under this fact situation there would be a mutual mistake of fact. An inspection of its records by Fleetwood should have shown that Parmer Steel had not been paid. No such records were available to appellants. Relief by way of cancellation is ordinarily not available if it appears that the party seeking cancellation has failed to exercise the degree of care and diligence that may be expected from a person of reasonable prudence. 10 Tex.Jur.3d, Cancellation and Reformation § 54. It is not our intention to determine whether the fact situation amounted to a mutual mistake, for which cancellation or recission could be had, because it is not necessary to our decision; however, we are of the opinion that if mutual mistake were to be found, it would have to be found by a jury because jury issues were present.

We find that the release in question was valid on its face, that it was properly identified and introduced into evidence and as such was a bar to Fleetwood's suit since the release had never been set aside and there were no pleadings at trial requesting that it be set aside. Appellants' points of error one through six are sustained.

In view of our holding that the release constituted a bar to Fleetwood's action against appellants, it is unnecessary for us to discuss the remaining points of error between appellants and Fleetwood. However, the judgment, by agreement of the two parties awarded damages in favor of Parmer Steel against Fleetwood for $18,000.

There was no issue submitted on Parmer Steel's claim for quantum meruit, because its claim was included in the compensatory damage issue (No. 16), which awarded Fleetwood $137,248.45. Apparently by agreement Parmer Steel and Fleetwood agreed that Parmer Steel would have judgment against Fleetwood for $18,000. The specific amount owed to Parmer Steel was a jury question and since the amount owed to Parmer Steel was not fixed by the jury we are unable to render judgment on its claim.

That part of the judgment awarding Parmer Steel damages and attorney's fees against appellants is reversed and remanded; that part of the judgment awarding Fleetwood damages and attorney's fees against appellants is reversed and judgment is rendered that Fleetwood take nothing; and that part of the judgment awarding Parmer Steel damages against Fleetwood is affirmed since this award was made by agreement of the parties.