Harry Weldon MILLER, Jr. a/k/a Pat Miller, Appellant,

v.

Rex DICKENSON et ux., Sue Dickenson, Appellees.

No. 2–83–186–CV.

Court of Appeals of Texas, Fort Worth.

Sept. 6, 1984.

Law Offices of Earl Rutledge, P.C., Earl Rutledge, and Barbara D. Nunneley, Fort Worth, for appellant.

Clayton Kramer, Wichita Falls, for appellees.

Before FENDER, C.J., and JOE SPUR-LOCK, II and HILL, JJ.

## OPINION

JOE SPURLOCK, II, Justice.

This is a suit for damages brought under the Texas Deceptive Trade Practices Act by appellees, Mr. and Mrs. Dickenson, as purchasers of a residence, against the appellant, Harry Miller, Jr., as the builder/vendor. This court previously affirmed the judgment of the trial court in an opinion issued June 14, 1984. Appellant filed a motion for rehearing which basically reurged his points on appeal. We overrule his motion, but are convinced that our prior opinion was in part in error. On this court's own motion, our prior opinion and judgment are withdrawn and we substitute in its place this opinion.

Based upon the jury's answers to special issues, the trial court entered judgment in favor of the Dickensons in the amount of $44,690.00 as actual damages, which included a recovery of $2,000.00 for mental anguish. In accordance with the verdict of the jury and the provisions of TEX.BUS. & COM.CODE ANN. sec. 17.50(b)(1) (Vernon 1973), the trial court found, as a matter of law, that the appellees were entitled to have their actual damages trebled and ordered that appellees recover from Miller the sum of $134,070.00. The trial court also awarded them reasonable attorney's fees, costs of court, and interest.

We affirm.

The house, which is the subject matter of this lawsuit, was built about five miles southwest of Decatur, Texas, on land owned by Miller, sometime in 1977. Shortly after completion, the house was purchased by T.L. Redwine and wife who lived in the house for approximately three months. When cracks developed in the foundation and exterior walls, the Redwines and Miller agreed that the house would be reconveyed to Miller. He moved into the house for a period of two to three months, and, during this time, employed a contractor to reinforce the foundation.

Walter and Judy Martin then leased the house from Miller and lived in it for a year and a half. In June of 1979, Miller sold the house and the land to the appellees, Rex and Susie Dickenson, for $45,000.00.

Prior to purchasing the property, Miller told the Dickensons that the house had had some settling problems which were normal for a new home, and that they had been completely repaired. The Dickensons testified they did notice some bricks cracking on one end of the house, but they did not notice any other cracks in the foundation or other walls or any other defects in the house. Mr. Dickenson also testified he was told by appellant that if any problems should develop, Miller would take care of them. Approximately six months after the Dickensons moved into the house, cracks began appearing in the walls, floors and foundation, and they began experiencing severe problems with the plumbing. From Miller's failure to remedy these problems, this lawsuit ensued.

■ Miller urges thirteen points of error. In points of error one through five, he argues that the trial court erred in entering judgment for the Dickensons because there was no special issue submitted as to the identity of the builder of the house in question.

Miller argues that the issue of whether he was the builder or not is in fact the basis of an independent ground of recovery upon the implied warranties pled. He further contends that where (as here) a party fails to request an issue upon an independent ground of recovery, such ground of recovery is waived. *See Martin v. McKee Realtors, Inc.*, 663 S.W.2d 446, 448 (Tex. 1984).

TEX.R.CIV.P. 279, however, provides in pertinent part as follows:

Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and upon which no issue is given or requested shall be deemed as waived; but where such ground of recovery or of defense consists of more than one issue, if one or

more of the issues necessary to sustain such ground of recovery or of defense, and necessarily referable thereto, are submitted to and answered by the jury, and one or more of such issues are omitted, without such request, or objection, and there is evidence to support a finding thereon, the trial court, at the request of either party, may after notice and hearing and at any time before the judgment is rendered, make and file written findings on such omitted issue or issues in support of the judgment, but if no such written findings are made, such omitted issue or issues shall be deemed as found by the court in such manner as to support the judgment.

We hold that appellees' ground of recovery consists of more than the issue of appellant being the builder. Other issues necessary to support appellees' ground of recovery were submitted to and answered by the jury. Rule 279 provides that if no findings were made, and the ground of recovery consists of more than one issue, such omitted issue or issues shall be deemed as found by the trial court in such manner as to support the judgment. *Turner, Collie & Braden v. Brookhollow, Inc.,* 642 S.W.2d 160, 165 (Tex.1982); *Cambridge Mut. Fire Ins. Co. v. Newton,* 638 S.W.2d 75, 80–81 (Tex.App.—Dallas 1982, writ ref'd n.r.e.). We also find that the evidence conclusively establishes that Miller was the builder of the house.

■ Miller contends that he was not the builder of the house because he took no part in the actual physical construction. Miller testified that he entered into an agreement whereby he would furnish the land for three houses, and Sam Morris would lay the slab foundation. They were to share in the profits from the sale of these houses. There was also testimony that several different men were hired to perform the framing, the plumbing, and the electrical work. These men were all paid by appellant from a special account on which only appellant could sign. Rex Dickenson testified that Miller told him that he had built the house. Upon reviewing the

evidence presented at trial, we find that Miller was the builder of the house in question. His points of error one through five are overruled.

Miller contends in his sixth point of error that appellees' cause of action was barred as a matter of law by the two year statute of limitations as provided for in TEX.REV. CIV.STAT.ANN. art. 5526 (Vernon 1958).

■ Prior to August 27, 1979, the Deceptive Trade Practices Act contained no statute of limitations provision. *See* 1977 Tex. Gen.Laws, ch. 216, sec. 1, at 600; 1975 Tex.Gen.Laws, ch. 62, sec. 1, at 149; 1973 Tex.Gen.Laws, ch. 143, sec. 1, at 322. In 1979, sec. 17.56A of the Deceptive Trade Practices Act was enacted, and it provided for a two year statute of limitations. The limitation period enacted by the 1979 amendments, however, does not apply to "a cause of action that arose either in whole or in part prior to [August 27, 1979] the effective date of this Act." 1979 Tex.Gen. Laws, ch. 603, sec. 9, at 1332. All of the oral representations, misrepresentations, and promises relating to the condition of the house were made on or before the date of closing, June 20, 1979. The statute of limitations provision of the 1979 Deceptive Trade Practices Act, therefore, does not apply in the instant case, and we must look outside the Act to determine the relevant limitation statute.

■ We have been unable to find a definitive ruling as to what limitations statute governs a suit under the Deceptive Trade Practices Act that "arose either in whole or in part" prior to August 27, 1979. A cause of action for damages arising from allegedly fraudulent conduct is governed by the two year statute of limitations. *Blum v. Elkins,* 369 S.W.2d 810, 812 (Tex. Civ.App.—Waco 1963, no writ); *Lacy v. Carson Manor Hotel,* 297 S.W.2d 367, 370 (Tex.Civ.App.—Dallas 1956, writ ref'd n.r. e.); art. 5526. Where an action is brought upon a breach of an express or an implied warranty, under some circumstances the existence of a written contract may be found and the four year statute of limitations will apply. *Holifield v. Coronado*

*Bldg. Inc.,* 594 S.W.2d 214, 216 (Tex.Civ. App.—Houston [14th Dist.] 1980, no writ); TEX.REV.CIV.STAT.ANN. art. 5527 (Vernon 1958). In addition, breach of warranty claims under the pre-1979 amendments to the Deceptive Trade Practices Act concerning the sale of goods were governed by a four year statute of limitation. *W.R. Weaver Co. v. Burroughs Corp.,* 580 S.W.2d 76, 80 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r.e.); TEX.BUS. & COM.CODE ANN. sec. 2.725 (Vernon 1968). *See also Marcotte v. American Motorists Ins. Co.,* 709 F.2d 378 (5th Cir.1983), for the fifth circuit's discussion of the two year limitation applying where there is no written contract.

Regardless of which limitation provision applies, we hold the appellees' suit is not barred, because the statute of limitations did not begin to run until the defects in the house were discovered sometime in December, 1979. In a cause of action alleging fraud, the statute of limitations begins to run from the time the fraud is discovered, or could have been discovered by the exercise of reasonable diligence. *Quinn v. Press,* 135 Tex. 60, 140 S.W.2d 438, 440 (1940); *Jim Walter Homes, Inc. v. Castillo,* 616 S.W.2d 630, 633 (Tex.Civ.App. —Corpus Christi 1981, no writ). In a case alleging a breach of implied warranty, the statute of limitations commences when the buyer discovers or should have discovered the injury. *Jim Walters Homes, Inc., supra; Richman v. Watel,* 565 S.W.2d 101,- 102 (Tex.Civ.App.—Waco), *writ ref'd n.r.e. per curiam,* 576 S.W.2d 779 (Tex.1978). Both appellees testified that they first began noticing cracks in the walls, sheetrock, floors and ceilings approximately four to six months after they moved into the house in late June of 1979. Both testified that prior to this time they did not notice any defects in the house. The Dickensons filed the instant lawsuit on September 23, 1981 well within two years from the date they discovered the defects. The burden is on Miller to prove that appellees' suit is *barred* by limitations. TEX.R.CIV.P. 94. This he has failed to do. Miller's sixth point of error is overruled.

In his seventh point of error, Miller asserts that the trial court erred in entering judgment because an improper measure of damages was submitted to the jury. In Special Issue Number 26, the jury was asked what amount of money would compensate the Dickensons for their economic loss. Miller argues that the proper measure of damages was not the cost of repairs, but rather the difference between the value of the house as represented and the actual value at the time of sale because the house could not be repaired without impairing the house as a whole or because the cost of repair constituted economical waste. The economic feasibility of correcting the defects of the house is the usual consideration in deciding which measure of damages to apply. *Jim Walter Homes, Inc., supra* at 635. If the house could not be repaired without impairing the entire structure or requiring the expenditure of money in excess of the value of the house, the correct measure of damages would be the difference in the value of the house as constructed and its value had it been constructed without defects or deviations. *Hutson v. Chambless,* 157 Tex. 193, 300 S.W.2d 943 (1957); *Jim Walters Homes, Inc., supra.* If the house could be repaired without economical waste, the remedial cost is a proper measure of damages. *Jim Walter Homes, Inc., supra.*

The Dickensons had an election of which measure of damages to plead and prove. If Miller disagreed with the application of the remedial cost measure of damages, he had the burden of proving that there was no difference in the value of the house as contracted for and as received, or that the difference was less than the remedial cost. *Jim Walter Homes, Inc., supra; Greene v. Bearden Enterprises, Inc.,* 598 S.W.2d 649, 653 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.). There was, however, no issue submitted to the jury as to whether the correction of the defects would impair the structure as a whole, nor was there any issue as to whether such correction of defects would result in excessive

cost or unreasonable economical waste. There was no request for the submission of these issues, and there was no objection to their omission; therefore, nothing is preserved for appellate review. *Guerra v. Brumlow,* 630 S.W.2d 425, 429 (Tex.App.—San Antonio 1982, no writ); *Durham v. Uvalde Rock Asphalt Co.,* 599 S.W.2d 866, 870 (Tex.Civ.App.—San Antonio 1980, no writ); TEX.R.CIV.P. 279.

The trial court submitted the case on the cost of repairing the defects. The jury returned a finding thereon and we must presume on appeal that the court impliedly found that the correction of the defects would neither impair the structure as a whole nor result in unreasonable economical waste or excessive cost. *Fidelity & Dep. Co. of Maryland v. Stool,* 607 S.W.2d 17, 22 (Tex.Civ.App.—Tyler 1980, no writ). Miller's seventh point of error is overruled.

In his eighth point of error, Miller alleges that the trial court erred in entering judgment which, based on the jury's verdict, awarded $2,000.00 damages for mental anguish. Miller argues that appellee did not plead, offer proof of, or obtain a jury finding which would support an award for mental anguish.

■ In order to recover damages for mental anguish, a party must allege and prove that the wrongful action which caused the suffering was grossly negligent or willful, or that the resulting anguish caused physical damage (injury). *Luna v. North Star Dodge Sales, Inc.,* 667 S.W.2d 115, 117 (Tex.1984); *Duncan v. Luke Johnson Ford, Inc.,* 603 S.W.2d 777, 779 (Tex. 1980); *Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931, 939 (Tex.), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980).

The Dickensons alleged in their pleadings that Miller knowingly made false or misleading statements of fact concerning the house in question. They also alleged that they suffered mental anguish which manifested itself physically and emotionally. The trial court's charge, in the instant case, defined "knowingly" to mean "actual awareness of the act or practice in ques-

tion, but actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness." An almost identical definition of "knowingly" was approved by the Supreme Court of Texas in *Luna v. North Star Dodge Sales, Inc.,* wherein the Court held that a finding that unconscionable actions were committed knowingly was sufficient to support recovery of mental anguish damages. In response to special issues, the jury in the case at bar found that Miller knowingly made false or misleading statements of fact to the Dickensons, and that such statements were a producing cause of the loss suffered by them.

Suzie Dickenson testified that the sewage from the house was backing up in the lines and eventually drained into the yard. She described the standing sewage as "black slime" and stated that the terrible odor was noticeable inside the house. She further testified that she was embarrassed to entertain company and that the entire situation has made her miserable. We find no evidence, however, that anyone suffered any actual physical injury.

In *Brown v. American Transfer & Storage Co.,* the plaintiff testified that his wife's "social life was limited because she had no transportation; she was upset all the time; and it was 'getting wearing [sic] on her nerves ...'" The Supreme Court of Texas therein did not allow recovery for mental anguish holding that there was no allegation that the wrongful action (under the Deceptive Trade Practices Act) that caused the suffering was willful and there was no resulting physical injury. *Brown, supra* at 938.

■ We find that the Dickensons have not proven any physical injury resulting from mental anguish which would support recovery for damages. However, the jury's finding that Miller "knowingly" made false or misleading statements of fact, and that those were a producing cause of appellees' loss is sufficient to support the award. *Luna v. North Star Dodge*

*Sales, Inc., supra; Brown, supra.* We overrule appellant's eighth point of error.

In points of error nine and ten, Miller argues that there was no evidence or insufficient evidence to support the submission of and the jury's answers to Special Issue Numbers 26b and 26h. These issues inquired as to the cost of repairing the plumbing and waste lines damaged in the foundation repair, and the cost of repairing the bathrooms and providing drainage away from the house.

■ In our review of Miller's "no evidence" point, the jury's fact findings must be upheld by us if there is more than a scintilla of evidence in support thereof. *Stedman v. Georgetown S. & L. Ass'n,* 595 S.W.2d 486, 488 (Tex.1979). There is some evidence, more than a scintilla, if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds as to the existence of the vital fact. *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). Moreover, in testing these findings, we must review the evidence in its most favorable light, considering only the evidence and inferences which support the findings, and rejecting the evidence and inferences contrary to the findings. *Stedman, supra;* Calvert, *"No evidence" and "Insufficient Evidence" Points of Error,* 38 Texas L.Rev. 361 (1960).

■ On the other hand, when we confront a challenge that the evidence is insufficient, we must consider and weigh all the evidence in the case, including that which is contrary to the verdict. *Burnett v. Motyka,* 610 S.W.2d 735, 736 (Tex.1980). We must determine whether the verdict was so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). In other words, this court must decide if the evidence which supports the jury's answers to the special issues is so weak, or the evidence to the contrary is so overwhelming, as to warrant a setting aside of the verdict and remanding for a new trial. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965); Calvert, *supra.*

■ Miller's expert witness, Charles Hurt, testified that if the slab is repaired, the chances are very good that there will be plumbing and utility line problems. Hurt also testified that all of the plumbing fixtures in the bathrooms may have to be reworked. He also stated that the drainage problem around the foundation could best be repaired by the use of a French drain, a pipe buried in the soil which would divert water around the house. He testified that plaintiff's exhibit number 102, a list of house repairs needed and their estimated cost, reflected the reasonable and customary costs of necessary repairs, in and around Decatur, Texas. The list reflected an amount of $750.00 to repair the plumbing and waste lines and $2,500.00 to repair the bathrooms and provide adequate drainage.

We find the evidence sufficient to support the submission of these special issues and the jury's answers thereto. Appellant's ninth and tenth points of error are overruled.

Miller asserts as his eleventh point of error that the trial court erred in entering judgment for appellees because the wording of Special Issue Numbers 2, 4, 6, 8, 10, 13, 16, 19, 22, and 25, each separately, and all together, constituted a comment upon the weight of the evidence. The special issues complained of by Miller were worded as follows: "Do you find that the fact that ... was a producing cause of the loss, if any, suffered by the Dickensons?", or "Do you find from a preponderance of the evidence that ... was a producing cause of the loss, if any, suffered by the Dickensons?"

Miller fails to point out that the producing cause issues were each conditioned on an affirmative answer to a preceding issue inquiring whether such fact existed. Each producing cause issue was preceded by the following instruction: "If you have answered the preceding issue 'We do', then answer the following issue; otherwise, do not answer the following issue."

We hold that the special issues were properly set forth and did not constitute a comment upon the weight of the evidence. Appellant's eleventh point of error is overruled.

Miller contends in point of error number twelve that the trial court erred in submitting substantially the same or identical fact inquiries in the special issues. He argues that such repetition of special issues amounts to direct comments upon the weight of the evidence.

From reviewing the special issues complained of by Miller, we find no duplication of such issues. Miller's twelfth point of error is overruled.

In his thirteenth and final point of error, Miller asserts that the trial court erred in entering judgment for the Dickensons because the jury's answers to the special issues did not establish whether Miller's alleged conduct factually caused damage to the Dickensons, as there was no instruction or definition in the charge as to the meaning of "loss".

In *Nobility Homes of Texas, Inc., v. Shivers,* 557 S.W.2d 77 (Tex.1977), the trial court held that a mobile home was negligently constructed and found the home's reasonable market value to be $8,750.00 less than its purchase price. The Supreme Court of Texas held that this amount was plaintiff's economic loss. *Nobility Homes, supra* at 78.

We hold that in the instant case, the context in which the term "loss" was used did not require a definition of the term in the charge to the jury. In addition, error, if any, in failing to set forth a definition of the term "loss" was waived by Miller's failure to object to same during trial. *Armendariz v. Mora,* 553 S.W.2d 400, 406 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.) (Trial court failed to include definition of loss of income.); TEX.R.CIV.P. 277. Miller's thirteenth point of error is overruled.

The judgment of the trial court is affirmed.